UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA
:
- v. -
:
MICHAEL J. LITTLE,
:
Defendant.
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 18 2013

**INDICTMENT**

S2 12 Cr. 647 (ALC)

**COUNT ONE**
(Obstructing and Impeding the Due Administration
Of the Internal Revenue Laws)

The Grand Jury charges:

I. **INTRODUCTION**

1.   At all times relevant to this Indictment, MICHAEL LITTLE, the defendant, was a citizen of the United Kingdom and the holder of a United States "green card," allowing LITTLE to reside and work in the United States. From in or about 2005, LITTLE was an attorney licensed to practice law in New York, among other places. In addition to practicing law from an office located in New York, New York, LITTLE provided investment advice to United States citizens and others. From in or about the 1990's through in or about 2008, LITTLE also maintained an apartment located in New York.

2.   A co-conspirator not named as a defendant herein was a lawyer based in Zurich, Switzerland (the "Swiss Lawyer"), who worked with MICHAEL LITTLE, the defendant, among others, in assisting United States citizens in opening and maintaining Swiss and other foreign bank accounts, as well as entities, such as corporations and trusts, that nominally owned and controlled those accounts.

3.      A co-conspirator not named as a defendant herein was an accountant based in Cranford, New Jersey (the "New Jersey Accountant"), who worked with, and at the suggestion of, MICHAEL LITTLE, the defendant, in assisting United States citizens in implementing financial transactions and other schemes in order to surreptitiously transfer assets and funds from foreign entities and accounts, including undeclared Swiss bank accounts, to United States citizens and their U.S.-based bank accounts. The New Jersey Accountant also prepared United States tax returns for taxpayers who had undeclared foreign bank accounts.

### A.   Obligations of United States Citizens and Residents With Respect to Reporting of Income and Foreign Financial Accounts

4.      Citizens and legal residents of the United States who have income in any one calendar year in excess of a threshold amount ("U.S. taxpayers") are obligated to file a U.S. Individual Income Tax Return, Form 1040 ("Form 1040"), for that calendar year with the IRS. On Form 1040, U.S. taxpayers are obligated to report their income from any source, regardless of whether the source of their income is inside or outside the United States. In addition, on Schedule B of Form 1040, the filer must indicate whether "at any time during [the relevant calendar year]" the filer had "an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account." If the U.S. taxpayer answers that question in the affirmative, then the U.S. taxpayer must indicate the name of the particular country in which the account is located.

5.      Separate and apart from the obligation to file Forms 1040 that include all income, U.S. taxpayers and others who have a financial interest in, or signature authority over, a financial account in a foreign country with an aggregate value of more than $10,000 at any time

during a particular calendar year are required to file with the IRS a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 ("FBAR"). The FBAR for any calendar year is required to be filed on or before June 30 of the following calendar year. In general, the FBAR requires that the U.S. taxpayer identify the financial institution with which the financial account is held, the type of account (either bank, securities, or other), the account number, and the maximum value of the account during the calendar year for which the FBAR is being filed.

6. Non-resident aliens are subject to United States income tax for certain United States source income as well as income that is "effectively connected" to the conduct of a United States trade or business. Non-resident aliens generally must report to the IRS, on an IRS Form 1040NR, all such United States source and effectively connected income regardless of the amount of income earned.

### B. Estate Tax Reporting Requirements

7. Executors of estates have an obligation to file a United States Estate (and Generation-Skipping Transfer) Tax Return, IRS Form 706, generally within nine months of the death of a decedent. The estate tax is a tax imposed on the transfer of the taxable estate of the decedent. Computation of the estate tax includes, among other things, ascertainment of the fair market value of everything, throughout the world, that the decedent owned or had an interest in at the date of death, including cash and securities, real estate, insurance, trusts, annuities, business interests, and other assets. The total value of all of these items constitutes the decedent's "gross estate." After determining the gross estate, certain deductions are allowed in arriving at the amount of the decedent's "taxable estate." These deductions may include mortgages and other debts, estate administration expenses, property that passes to surviving spouses, and qualified charities. For

taxable estates in excess of $3 million, estates of decedents who passed away during the 2001 tax year were required to pay a tax of $1,290,800 for the first $3 million of the taxable estate, plus 55% of any excess amount.

### C. The Estate of The New York Businessman and the Millions of Dollars of Assets Left in Foreign Entities and Undeclared Foreign Bank Accounts

8.  In or about May 2001, a prominent New York businessman (the "Businessman") passed away, leaving an estate valued in excess of approximately $24 million – more than half of which the Businessman had caused to be maintained in undeclared foreign bank and financial accounts. Upon the passing of the Businessman, MICHAEL LITTLE, the defendant, and the Swiss Lawyer exercised control over millions of dollars of the Businessman's undeclared foreign account assets, which were nominally held in one or more foreign entities, trusts, and/or bank accounts for the benefit of the Businessman's family.

## II. MICHAEL LITTLE'S CORRUPT EFFORTS TO OBSTRUCT AND IMPEDE THE DUE ADMINISTRATION OF THE IRS

9.  Beginning in or about 2001, and continuing through in or about 2012, MICHAEL LITTLE, the defendant, executed and endeavored to execute a corrupt endeavor to obstruct and impede the due administration of the IRS through various means and methods, including, among others, the following:

(a) working with the Swiss Lawyer in assisting members of the Businessman's family — who were heirs to the Businessman's fortune and executors of his estate — in maintaining and concealing their undeclared offshore assets, entities, and bank accounts;

(b) enlisting the New Jersey Accountant to provide various accounting and other services to members of the Businessman's family in order to surreptitiously transfer money from

4

undeclared foreign accounts and entities to members of the Businessman's family in the United States;

   (c) enlisting one of the Businessman's family members to serve as a partial owner of, and tax return signatory for, an entity used in transferring undeclared assets from a Swiss bank account belonging to the Businessman's spouse to the United States;

   (d) causing millions of dollars to be transferred from undeclared foreign entities and accounts to members of the Businessman's family in the United States;

   (e) causing executors of the Businessman's estate to falsely and fraudulently under-report, on a United States Estate (and Generation-Skipping Transfer) Tax Return, IRS Form 706 for the estate of the Businessman (the "Estate Tax Return"), the gross assets of the estate and the estate tax due and owing to the IRS;

   (f) receiving, in part through an undisclosed foreign bank account LITTLE opened and controlled in Guernsey, the Channel Islands (the Channel Islands Account"), in excess of $300,000 in fees paid to LITTLE for the assistance and other services he provided to members of the Businessman's family, which amounts LITTLE failed to report to the IRS;

   (g) failing to report, through tax returns filed with the IRS, hundreds of thousands of dollars of additional income he earned and was paid through and as a result of his law practice in New York and elsewhere;

   (h) failing to file annual FBARs with the IRS, identifying the financial institutions with which the financial accounts over which he had signatory authority or control were held, the types of accounts (either bank, securities, or other), the account numbers, and the maximum value of the accounts during the calendar years for which the FBARs were being filed; and

(i) causing to be filed with the IRS Forms 3520 that falsely and fraudulently claimed that millions of dollars received by the Businessman's wife during the years 2001-2010 were "gifts" from a nonresident alien or foreign estate whereas, in truth and fact, as LITTLE well knew and understood, the funds received by the Businessman's wife were funds that were held by LITTLE and the Swiss Lawyer for the benefit of and in trust for the Businessman's wife, to whom the funds were transferred by LITTLE and the Swiss Lawyer pursuant to the Businessman's wishes.

A. **The Role of MICHAEL LITTLE and the Swiss Lawyer in Assisting Members of the Businessman's Family in Maintaining Undeclared Foreign Assets and Accounts and Surreptitiously Transferring Assets to the U.S.**

10. Pursuant to a plan established with MICHAEL LITTLE, the defendant, and the Swiss Lawyer, and in an attempt to conceal the true value of the Businessman's gross estate, the Businessman arranged for his surviving spouse — a co-executor of the Businessman's estate — to receive after the Businessman's death approximately $5 million from the undeclared foreign bank and financial accounts. This $5 million was in addition to a substantial amount of United States-based money and property left to the Businessman's surviving spouse by the Businessman through his will and certain trusts. In addition to the foregoing, the Businessman planned and arranged for five of his children, all United States citizens and taxpayers, each to receive in excess of $1.5 million that was maintained in an undeclared foreign bank account of a foreign entity.

11. In order to effectuate the Businessman's plan, MICHAEL LITTLE, the defendant, and the Swiss Lawyer caused the $5 million left to the Businessman's spouse to be transferred to a foreign entity or trust named Lixam, which the Swiss lawyer and LITTLE arranged to set up, and of which the Swiss Lawyer and LITTLE made themselves the sole directors. The Swiss Lawyer also arranged for the opening of a Swiss bank account to hold the Lixam assets.

6

Between 2001 and 2009, LITTLE collected over $350,000 in fees from the Businessman's family for providing investment advice and other services with respect to the funds in the Lixam bank account, including assisting in the surreptitious transfer of those funds from Switzerland and other foreign jurisdictions to the United States, to benefit the Businessman's surviving spouse.

12.     In order to structure and carry out the transfer of the surviving spouse's funds from the Swiss bank account, MICHAEL LITTLE, the defendant, enlisted the assistance of the New Jersey accountant. Accordingly, the New Jersey Accountant, LITTLE, and the Swiss Lawyer aided and assisted the transfer of those funds from Lixam's Swiss and other bank accounts to the bank account of a United States partnership entity of which the Businessman's spouse was the principal owner. LITTLE and the New Jersey Accountant also arranged for one of the Businessman's daughters to serve as a part owner of, and tax return signatory for, the partnership entity that surreptitiously received the funds from the Swiss account. The funds routed in this fashion between 2002 and 2009 — totaling millions of dollars — were thereafter filtered out of the partnership entity to the personal bank account of the surviving spouse, who used the money for personal expenses.

13.     In or about August 2002, a member of the Businessman's family sent an e-mail from New York, New York to MICHAEL LITTLE, the defendant, asking whether the "structure" implemented by LITTLE and the New Jersey Accountant for the family member's mother — by which she surreptitiously transferred money from Switzerland to an entity she owned in the United States — was "for widows only, or can children organize something along the same lines?" After LITTLE responded that he would discuss this topic with the New Jersey Accountant, another member of the Businessman's family, a daughter of the Businessman, ultimately arranged with the New Jersey Accountant to cause the transfer of hundreds of thousands of dollars to the United States

7

from an undeclared Swiss bank account, which this daughter, like a number of her siblings, caused to be opened with the assistance of the Swiss lawyer and also caused to be hidden from the IRS. The transfer of the funds of the Businessman's daughter from her Swiss account to the United States was accomplished through the establishment of a sham mortgage, which was set up through the New Jersey Accountant and which allowed the Businessman's daughter to purchase United States real estate while concealing that the source of the funds for the real estate purchase was money from the undeclared Swiss account of the Businessman's daughter. In exchange for assisting members of the Businessman's family in the aforementioned transfers and activity, and for providing tax and accounting services for certain family members, the New Jersey Accountant was paid an annual fee of approximately $20,000, which was routed to him by LITTLE, who received the funds from and through the Swiss Lawyer.

### B.  The False Tax Reporting Caused by MICHAEL LITTLE

14.  None of the above-described undeclared funds left to the Businessman's spouse or the Businessman's children were disclosed, by either MICHAEL LITTLE, the defendant, or members of the Businessman's family, to the attorney responsible for preparing the Estate Tax Return for the Businessman's estate, following his death. As a result, that tax return, which was filed with the IRS in or about 2002, falsely understated, by over $10 million, the gross assets of the estate, as well as the true and correct amount of estate tax due and owing to the IRS.

15.  None of the Swiss and other accounts set up and maintained by members of the Businessman's family following the Businessman's death were disclosed to the IRS, by either the family members or MICHAEL LITTLE, the defendant. Consequently, various members of the Businessman's family filed U.S. Individual Income Tax Returns, Forms 1040, and accompanying

schedules, for various years between 2001 and 2009 in which they falsely failed to report their foreign bank account control, ownership, and signatory authority, as well as corresponding interest income and capital gains or losses related to those accounts.

### C. The False Reporting of "Gifts" Caused by MICHAEL LITTLE

16. Following the disclosure to the IRS by Swiss bank UBS of certain information concerning undeclared foreign accounts maintained by one or more members of the Businessman's family, the IRS began a criminal investigation concerning those accounts in or about 2009. As part of the investigation, a Special Agent of the IRS interviewed the New Jersey accountant, who disclosed, among other things, that the funds that had been transferred from Lixam's Swiss and other bank accounts to benefit the Businessman's spouse in the United States were funds being held by LITTLE in trust and for the benefit of the Businessman's spouse, pursuant to the Businessman's wishes.

17. After learning that the New Jersey Accountant had made the aforementioned statements to the IRS and others, MICHAEL LITTLE, the defendant, took steps to falsely and fraudulently portray the transfers to the Businessman's wife as "gifts" made by the Swiss Lawyer as a result of the Swiss Lawyer's detached generosity and desire to provide unsolicited financial assistance to the Businessman's wife. Accordingly, between 2009 and 2012, LITTLE caused certain accountants and a tax lawyer to prepare, on behalf of the Businessman's wife, IRS Forms 3520 for the tax years 2001-2010. Those Forms 3520, which were filed with the IRS between November 2010 and January 2012, falsely reported that the funds transferred to the Businessman's wife for the tax years 2001-2010 — totaling over $3.6 million -- were "gifts" to the Businessman's wife from a foreign person.

### D. MICHAEL LITTLE's Failure to Report Income to the IRS and His Signatory Authority and Control Over Foreign Bank Accounts

18. MICHAEL LITTLE, the defendant, failed to file any personal income tax returns with the IRS between 2001 and 2010, which he was obligated to do. Consequently, LITTLE failed to report to the IRS over $400,000 in fees that were paid to him between 2001 and 2009 as a result of services provided to the Businessman's spouse and members of the Businessman's family. LITTLE caused a portion of those fees to be routed to the Channel Islands Account, and subsequently transferred to accounts he controlled in the United States and the United Kingdom. LITTLE also failed to report to the IRS over $300,000 in fees and other income paid to him between 2005 and 2010 as a result of, among other things, legal work performed by him in the United States or for United States clients.

19. In addition to his failure to report income to the IRS, MICHAEL LITTLE, the defendant, who owned and controlled the Channel Islands Account and also exercised signatory authority over the Swiss account of Lixam, also failed to file FBARs between 2002 and 2011.

### Statutory Allegations

20. From in or about 2001 through and 2012, in the Southern District of New York and elsewhere, MICHAEL LITTLE, the defendant, did corruptly obstruct and impede, and endeavor to obstruct and impede, as set forth above, the due administration of the Internal Revenue Laws.

(Title 26, United States Code, Section 7212(a).)

## COUNTS TWO THROUGH SEVEN
(Failure to File Individual Income Tax
Returns — 2005-2010 Tax Years)

The Grand Jury further charges:

21.     The allegations in paragraphs 1 through 19 of this Indictment are repeated and realleged as though fully set forth herein.

22.     On or about the return due dates set forth below, in the Southern District of New York, MICHAEL LITTLE, the defendant, willfully and knowingly did fail to make an income tax return for the calendar years stated below, to the Internal Revenue Service or to the Director, Internal Revenue Service Center, Holtsville, New York, or to any other proper officer of the United States, stating specifically the items of his gross income and any deductions and credits to which he was entitled, whereas, as LITTLE then and there well knew and believed, he had gross income requiring the filing of a return for each of such years, and, by reason of such income, he was required by law following the close of each calendar year, and on or before each of the return due dates stated below, to make said income tax returns to the Internal Revenue Service, to the Director of the Internal Revenue Service Center, or to any other proper officer of the United States:

| COUNT | TAX YEAR | APPROXIMATE DUE DATE OF INCOME TAX RETURN |
|---|---|---|
| 2 | 2005 | 04/17/2006 |
| 3 | 2006 | 04/17/2007 |
| 4 | 2007 | 10/15/2008 |
| 5 | 2008 | 10/15/2009 |
| 6 | 2009 | 04/15/2010 |
| 7 | 2010 | 04/18/2011 |

(Title 26, United States Code, Section 7203.)

11

## COUNT EIGHT
### (Willful Failure to File Reports of Foreign Bank and Financial Accounts)

The Grand Jury further charges:

23. The allegations in paragraphs 1 through 19 of this Indictment are repeated and realleged as though fully set forth herein.

24. On or before the June 30, 2003, through on or before June 30, 2011, in the Southern District of New York and elsewhere, MICHAEL LITTLE, the defendant, knowingly and willfully did fail to file with the Commissioner of the IRS an FBAR disclosing that he had a financial interest in, and signature and other authority over, a bank, securities, and other financial accounts in a foreign country, to wit, at least one foreign bank, securities, and other financial account at Barclay's Bank, located in Guernsey, Channel Islands, which account had an aggregate value of more than $10,000 during the years between 2002 through 2010.

(Title 31, United States Code, Sections 5314 and 5322(a); Title 31,
Code of Federal Regulations, Sections 103.24, 103.27(c, d), and 103.59(b);
Title 18, United States Code, Section 2.)

## COUNT NINE
### (Conspiracy)

25. The allegations in paragraphs 1 through 19 of this Indictment are repeated and realleged as though fully set forth herein.

### Statutory Allegations

26. From in or about 2001 through in or about 2012, in the Southern District of New York and elsewhere, MICHAEL LITTLE, the defendant, and others known and unknown, including the Swiss Lawyer, the New Jersey Accountant, and various members of the Businessman's

family, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States and an agency thereof, to wit, the Internal Revenue Service, and to commit offenses against the United States, to wit, violations of Title 26, United States Code, Sections 7206(1) and 7206(2).

### Objects of the Conspiracy

27. It was a part and an object of the conspiracy that MICHAEL LITTLE, the defendant, and others known and unknown, including the Swiss Lawyer, the New Jersey Accountant, and various members the Businessman's family, willfully and knowingly would and did defraud the United States of America and the IRS by impeding, impairing, defeating, and obstructing the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment, and collection of income and estate taxes.

28. It was further a part and object of the conspiracy that MICHAEL LITTLE, the defendant, and others known and unknown, including the New Jersey Accountant and various members of the Businessman's family, willfully and knowingly agreed that members of the Businessman's family would and did subscribe to false U. S. Individual Income Tax Returns, Forms 1040, and a United States Estate (and Generation-Skipping Transfer) Tax Return, IRS Form 706, which returns contained and were verified by written declarations that they were made under the penalties of perjury, and which LITTLE and others did not believe to be true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

29. It was further a part and an object of the conspiracy that MICHAEL LITTLE, the defendant, and others known and unknown, including the Swiss Lawyer, the New Jersey Accountant, and various members the Businessman's family, would and did willfully and knowingly

aid, assist in, and procure, counsel, and advise the preparation and presentation to the IRS, of U.S. Individual Income Tax Returns, Forms 1040, along with accompanying schedules, and a United States Estate (and Generation-Skipping Transfer) Tax Return, IRS Form 706, which were false and fraudulent as to material matters, in that (a) the Forms 1040 and accompanying schedules failed to identify foreign bank account control and ownership, as well as corresponding interest income and capital gains related to those accounts; and (b) the Form 706 falsely and fraudulently stated that the Businessman's gross estate was valued at $11,741,765, in violation of Title 26, United States Code, Section 7206(2).

### Overt Acts

30.     The following overt acts, among others, were committed and caused to be committed, in the Southern District of New York and elsewhere, by MICHAEL LITTLE, the defendant, and his co-conspirators in furtherance of the conspiracy and to effect its objects:

(a)     In or about August 2001, LITTLE, together with the Swiss Lawyer, met at a hotel in New York, New York with members of the Businessman's family.

(b)     In or about October 2001, the Swiss Lawyer caused to be opened a bank account at UBS AG in Switzerland for the benefit of one of the members of the Businessman's family.

(c)     In or about August 2002, various members of the Businessman's family members signed and subsequently caused to be filed with the IRS the Estate Tax Return, Form 706, for the estate of the Businessman, which falsely and fraudulently understated the amount of the Businessman's gross estate.

(d)     At various times between 2001 and 2010, LITTLE met in the United States

with the Businessman's surviving spouse to discuss the transfer, from offshore accounts to the United States, of millions of dollars left to her by the Businessman, which money had never been reported to the IRS for estate tax or income tax purposes.

(e) At various times between 2001 and 2010, LITTLE caused millions of dollars to be sent from undeclared offshore accounts to the United States bank account of a United States entity principally owned by the Businessman's surviving spouse, who made personal and other use of the money. LITTLE also enlisted the New Jersey Accountant to prepare United States tax returns for the entity, and enlisted one of the Businessman's daughters to become a part owner of the entity and to sign those entity tax returns.

(f) On or about August 12, 2002, a member of the Businessman's family sent an e-mail from New York, New York to LITTLE asking whether the "structure" implemented by LITTLE and the New Jersey Accountant for the family member's mother was "for widows only, or can children organize something along the same lines?"

(g) In or about May 2003, at the urging of and with the assistance of the New Jersey Accountant, a member of the Businessman's family engaged in a sham mortgage transaction designed to repatriate money from a Swiss bank account into the United States while concealing the existence of the family member's Swiss bank account from the IRS.

(h) In or about and between 2000 and 2006, a member of the Businessman's family devised and utilized a code system to discuss his family's dealings with LITTLE, the Swiss Lawyer, the NJ Accountant, and certain offshore accounts. Consequently, between 2001 and 2009, various members of the Businessman's family sent and received e-mails that used the code-word system, which included code words for the IRS ("FDA"), money ("beef"), thousand dollar

increments of money ("lbs"), and financial or bank accounts to hold or transfer money ('refrigerator").

(i)  Between 2001 and 2008, LITTLE was paid, in part through his Channel Islands Account, in excess of $300,000 in compensation from members of the Businessman's family in exchange for various services, including investment advice and assisting in maintaining certain undeclared foreign assets and entities.

(j)  Between 2003 and 2008, the Swiss Lawyer sent various communications from Switzerland to a member of the Businessman's family in New York in which the Swiss Lawyer used code names to refer to undeclared bank and financial accounts.

(k)  In or about July 2007, the Swiss Lawyer sent approximately $10,000 from an undeclared Swiss account he maintained on behalf of one of the Businessman's daughters to the United States bank account of Steiner Productions, the entity principally owned by the Businessman's wife. The $10,000 was thereafter used to pay the private school tuition of a child of the Businessman's daughter.

(l)  At various times between 2007 and 2010, the Swiss Lawyer caused funds from an undisclosed Swiss account he maintained on behalf of one of the Businessman's daughters to fund a debit card that was used in the United States by that Businessman's daughter.

(Title 18, United States Code, Section 371.)

## COUNTS TEN THROUGH NINETEEN
(Aiding and Assisting the Preparation of False
IRS Forms 3520 — 2001-2010 Tax Years)

The Grand Jury further charges:

31.   The allegations in paragraphs 1 through 19 of this Indictment are repeated and realleged as though fully set forth herein.

32.   On or about the filing dates set forth below, in the Southern District of New York, MICHAEL LITTLE, the defendant, willfully and knowingly did aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS, of Annual Returns to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts, Forms 3520, for the Businessman's wife for the calendar years set forth below. The returns were false and fraudulent as to material matters in that they claimed, in Part IV, that the funds received by the Businessman's wife during the years in question were "gifts" from a nonresident alien or foreign estate whereas, in truth and fact, as LITTLE well knew and understood, the funds received by the Businessman's wife were funds that were held by LITTLE and the Swiss Lawyer for the benefit of and in trust for the Businessman's wife, to whom the funds were transferred by LITTLE and the Swiss Lawyer pursuant to the Businessman's wishes:

| COUNT | CALENDAR YEAR | APPROXIMATE FILING DATE OF RETURN |
|---|---|---|
| 10 | 2001 | 01/20/2012 |
| 11 | 2002 | 01/20/2012 |
| 12 | 2003 | 01/20/2012 |
| 13 | 2004 | 01/20/2012 |
| 14 | 2005 | 01/20/2012 |

| COUNT | CALENDAR YEAR | APPROXIMATE FILING DATE OF RETURN |
|:---:|:---:|:---:|
| 15 | 2006 | 01/20/2012 |
| 16 | 2007 | 01/20/2012 |
| 17 | 2008 | 01/20/2012 |
| 18 | 2009 | 10/20/2010 |
| 19 | 2010 | 11/03/2011 |

(Title 26, United States Code, Section 7206(2); Title 18,
United States Code, Section 2.)

*[signature]*
FOREPERSON

*[signature]*
PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

MICHAEL J. LITTLE,

Defendant.

## INDICTMENT

S2 12 Cr. 647 (ALC)

(26 U.S.C. §§ 7212(a), 7203, 7206(2); 31 U.S.C. §§ 5314 and 5322(a); 31 C.F.R. §§ 103.24, 103.27(c, d), and 103.59(b); 18 U.S.C. §§ 371 and 2.)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

*Kathleen Sueick*
Foreperson.

3/18/13  Fld Superseding 2nd Ind
          Mag Judge Pohorelsky