UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

UNITED STATES OF AMERICA,

v.                                                              **12-cr-00647 (ALC)**

MICHAEL LITTLE,                                      **OPINION & ORDER**

            **Defendant.**

----------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/16/2014

**ANDREW L. CARTER, JR., United States District Judge:**

    *Pro se* Defendant Michael Little has submitted three motions to the Court. *First*, Defendant seeks reconsideration of the part of this Court's April 23, 2014 order permitting the Government to take a deposition of Donna Francis under Rule 15 of the Federal Rules of Criminal Procedure. (*See* Def.'s Mar. 7, 2014 & May 16, 2014 Ltrs., ECF Nos. 112, 124.) *Second*, Defendant seeks an order directing the Department of Justice's Office of International Affairs to seek assistance from Swiss authorities in arranging Defendant's court-ordered deposition of Dr. Walter Mullhaupt. (*See* Def.'s March 25, 2014, ECF No. 114.) *Third*, Defendant seeks the Court's assistance with defraying the expenses of his defense, including compensating his standby counsel. (*See* Tr. of Apr. 25, 2014 Status Conf., ECF. No. 119.) For the reasons described below, the Court denies all three motions.

## I.  Reconsideration of April 23, 2014 Order

    In its April 23, 2014 Order (the "Order"), this Court held that the Government was permitted to take a deposition of Donna Francis under Rule 15 of the Federal Rules of Criminal Procedure ("Rule 15").   This Court found that the Government had sufficiently demonstrated that (1) that Ms. Francis was unavailable, as a U.K. citizen who is unwilling to travel to the

United States to testify, and (2) that her testimony was directly relevant to the issue of whether certain monies at issue in this case were loans or income. (*See* Order, at 3-4, ECF No. 117.)  The Defendant argues that this was error because Ms. Francis is "a defense witness" and Rule 15 "contemplates a party taking the deposition of his only his own witness," and because the Government intends to impermissibly impeach her at the deposition. (Def's May 16, 2014 Ltr., at 2-3.)  More particularly, Defendant argues that Ms. Francis cannot be a Government witness because she allegedly refuses to testify without the Defendant's consent.[1]

Defendant's arguments misapprehend the scope of the Order.  Among other things, the Order holds that Ms. Francis's testimony is directly relevant to the Government's case-in-chief sufficient to warrant a Rule 15 deposition to preserve her testimony.  Thus, if Ms. Francis were within the scope of this Court's subpoena power, she could be a witness for the Government, notwithstanding her alleged unwillingness to cooperate.  *See, e.g.*, *Chavez v. Martinez*, 538 U.S. 760, 767-78 (2003) (plurality opinion) ("It is well established that the government may compel witnesses to testify at trial . . . on pain of contempt . . . so long as the witness is not the target of the criminal case in which he testifies.").  That, as Defendant points out, courts have held that neither the prosecution nor the defense can compel a prospective witness to give an interview or otherwise cooperate is inapposite, because the Court did not order an interview or that Ms. Francis cooperate with the Government, but permitted a deposition which could be used as *testimony* at trial.

Defendant's citations to the Ninth Circuit's statements in *United States v. Rich*, 580 F.2d 929, 934 (9th Cir. 1978) and *United States v. Fei Ye*, 436 F.3d 1117, 1123 (9th Cir. 2006) that

---

[1]     Although motions for reconsideration are not explicitly provided for in the Federal Rules of Criminal Procedure, the Second Circuit has held that they may be filed in criminal cases and are governed by the standards applied to their civil analogues. *See United States v. Clark*, 984 F.2d 31, 33-34 (2d Cir. 1993).

2

Rule 15 "contemplates a party taking the deposition of only his own witness," also miss the mark. Placed in their proper context, the language merely articulates that the purpose of Rule 15 is testimony preservation and not discovery, such that an unavailable witness's testimony should be material to the case of the party seeking the deposition—an element that this Court has already found satisfied in this case. *See, Rich*, 580 F.2d at 934 ("[T]he rule contemplates a party taking the deposition of only his own witness, *a requirement that comports with the purpose of preserving testimony*.") (emphasis added) (footnote omitted); *Fei Ye*, 436 F.3d at 1123 (reversing order for Rule 15 deposition because "[a]lthough the district court order acknowledges that Rule 15 does not permit deposition for discovery purposes, the court inexplicably proceeded to authorize pre-trial depositions for that very purpose"). This interpretation is supported by the fact that both *Rich* and *Fei Ye* involved denials of the defendants' motions for a Rule 15 deposition of a witness the Government would call in support of its case-in-chief. Indeed, most courts that have cited the language have done so in the context of resolving Rule 15 motions from defendants. *See, e.g., United States v. King*, No. 08-cr-002, 2009 WL 1045885, at *6 (D. Id. Apr. 17, 2009) (citing *Rich* for the proposition that "does not entitle a defendant to depose the government's witness who will testify at trial"). Defendant has not cited any cases nor proffered a compelling reason why this Court should expansively interpret that language here to preclude the Government from taking a deposition of an unavailable witness whose testimony is material to its case-in-chief.

Finally, Defendant's speculation about the Government's intention to impermissibly examine Ms. Francis conflates this Court's permission of the deposition with the deposition's admissibility, but these are in fact separate issues. *See, e.g., United States v. Zavieh*, No. 12-cr-00195, 2013 WL 1283319, at *2 (N.D. Cal. Mar. 27, 2013) ("Deposition taken under Rule 15 are

3

not automatically admissible . . . ."). Rule 15 itself provides clear standards on the matter: under paragraph (e)(2), "the scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial"; under paragraph (f), the deposition's admissibility is governed by the Federal Rules of Evidence; and, under paragraph (g), objections are permitted during the deposition.  Defendant's objections are thus premature.  To the extent the Government's examination of Ms. Francis is improper, the Defendant can make the relevant objections at the deposition and object to the admissibility of such testimony at trial.

## II. Request to Swiss Authorities for Rule 15 Deposition

The Court's April 23, 2014 Order also permitted the Defendant to take a Rule 15 deposition of Dr. Walter Mullhaupt in Switzerland "to the extent permissible by Swiss law." (Order, at 6.) With respect to this aspect of the Order, Defendant moves for an order directing the Department of Justice's Office of International Affairs to contact Swiss authorities and request this deposition.  (Def.'s Mar. 25, 2014 Ltr., at 3.)  Defendant claims this Court has the authority to do so under the United States-Switzerland Mutual Legal Assistance Treaty ("MLAT") and the Swiss Federal Act on International Assistance in Criminal Matters ("IMAC").  The Court considers each proffered basis in turn.

### A. MLAT

Under MLAT, the U.S. and Switzerland agreed to "undertake to afford each other mutual assistance in: [a] investigations or court proceedings in respect of offenses the punishment of which falls or would fall within the jurisdiction of judicial authorities of the requesting State or a state or canton thereof . . . ."  Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters, U.S.–Switz., art. 1, Dec. 23, 1975, 27 U.S.T. 2019.  Article 38(1) of MLAT provides that "[w]henever the procedures by this Treaty

would facilitate assistance in criminal matters *between the contracting parties provided under any other convention . . . the procedure provided by this Treaty shall be used to furnish such assistance.*" (emphasis added).  *Id.*  Defendant argues that this provision is applicable here because the 2009 Treaty between the U.S. and Switzerland on the Request for Information from the Internal Revenue Service regarding UBS AG qualifies as "any convention pertaining to assistance in criminal matters."  (Def.'s Mar. 25, 2014 Ltr., at 3.)  Thus, Defendant believes MLAT procedures must be utilized to request Swiss assistance for the Mullhaupt deposition per Article 38(1).

This Court need not reach the merits of whether Article 38(1) applies here, however, because, even if it does, Defendant lacks standing to seek an order mandating the Government's use of MLAT procedures under the Second Circuit's decision in *United States v. Davis*, 767 F.2d 1025 (2d Cir. 1985).  In *Davis*, the Second Circuit held that, under Article 37 of MLAT, the treaty does not create any judicially enforceable rights for private parties except with respect to specifically enumerated provisions.  *See* 767 F.2d at 1030 ("the clear and unambiguous language in Article 37 of the Treaty reflect[s] the intention of the signatory states that the Treaty would not—except in certain specifically designated circumstances—confer judicially enforceable rights on individuals"); *see also Weber v. Finker*, 554 F.3d 1379, 1383 (11th Cir. 2009) ("The treaty is silent on its applicability to discovery request by non-States Parties criminal defendants.").  As Article 38(1) is not one of those specifically enumerated provisions, *see* art. 37, Defendant lacks standing under MLAT to attempt to enforce it.

**B.  IMAC**

"IMAC authorizes the Government of Switzerland to provide assistance in criminal manners to foreign countries that extend reciprocal treatment to Switzerland."  *Credit Suisse v.*

*U.S. Dist. Court for Cent. Dist. of Cal.*, 130 F.3d 1342, 1347 (9th Cir. 1997).  Although this Court has not identified any case in which a federal or state court has sought Swiss assistance under this Swiss statute, Defendant argues that this Court has the authority to order OIA to contact the Swiss authorities under Articles 75(1) and (2) of IMAC.  Article 75(1) provides that "[r]equests for assistance may be submitted by authorities that are competent to investigate offen[s]es or make decision in other proceedings."  (Ex. C to Def.'s Reply Mem., ECF No. 98-3, at 29.)  Article 75(2) provides that "Swiss authorities may also accept request for the execution of procedural acts from the parties authori[z]ed to make them if those acts are incumbent upon the parties under the law of the requesting State."  (*Id.*)  Defendant also argues, in the alternative, that this Court has the authority to issue the sought order under Article 63(5), which provides that "[a]ssistance which will exonerate a defendant is permitted even if the request is inadmissible under Articles 3-5."  (*Id.* at 24.)

Defendant's citations to these IMAC provisions, however, ignore a fundamental threshold issue.  IMAC, unlike MLAT, is only a Swiss statute, and as such, it cannot by itself be the source of judicially enforceable rights for private parties in the U.S., or empower this Court to issue orders directing the Government to take actions in the field of the foreign affairs that it could not otherwise.  *See Mora v. New York*, 524 F.3d 183, 201 (2d Cir. 2008) ("[A] due respect for the Constitution's separation of powers, and a recognition or our own weak tools in this area, require the courts to refrain from venturing heedlessly into the realm of foreign affairs.").  Defendant's IMAC arguments, in other words, lack a necessary predicate in U.S. law granting him standing to enforce the foreign statute in this Court.

The Court also notes that Defendant has not, in any event, satisfactorily demonstrated that IMAC contemplates foreign courts or private parties tendering such requests to Swiss

authorities.  Specifically, IMAC's provisions regarding the form of requests indicate that they are only properly made by the political branches of government.  *See, e.g.*, IMAC, art. 28(2)(a) ("The following information must be provided in a request: the *office* issuing the request . . . .") (Ex. C to Def.'s Reply Mem., ECF No. 98-3, at 13); *id.*, art. 29(1) ("The Federal Office may receive request directly *from the ministry of justice of the requesting State*.") (emphasis added) (Ex. C to Def.'s Reply Mem., ECF No. 98-3, at 14).  Relatedly, even granting that Article 63(5)'s exoneration exemption applies here, by its very terms it only exempts requests that do not comply with Articles 3-5 of IMAC.  (*See* Ex. C to Def.'s Reply Mem., ECF No. 98-3, at 24.) The requirement that an "office" of the requesting State issue the request is not waived and, even if it were, it is unclear why the Defendant could not then make this request to the Swiss authorities directly without OIA assistance.

### III. Criminal Justice Act Appointment of Standby Counsel

#### A.  Background

Given the complexity of the facts and the applicable law in this case, this Court has since the outset of the case advised the *pro se* Defendant (a practicing attorney in this District) that the Court believed it was prudent that he be assisted by standby counsel.  For example, on December 4, 2012, this Court advised Defendant that it would appoint standby counsel from the Criminal Justice Act ("CJA") panel, free of charge, if he so desired.  (*See* Dec. 4, 2012 Status Conf., Tr. 14:1-12.)  The Defendant, however, responded that he was expressly waiving that opportunity in favor of "financial arrangements [he had] made" with currently retained standby counsel, Saul Bienfeld.  (Tr. 14:12-24.)  This was Mr. Bienfeld's appearance before the Court in this case.

At the status conference on April 25, 2014, however, the Defendant advised the Court that he was now unable to cover the costs of his defense, and that Mr. Bienfeld in particular had

only been paid one-third of his fee.  Defendant subsequently submitted an *ex parte* application to the Court seeking vouchers to assist in the payment Mr. Bienfeld's fees, as well as in defraying the costs of transcripts, witness subpoenas, travel expenses and expert fees.  To the Court's knowledge, however, Defendant can only be granted the substance of this relief through the temporary appointment of Mr. Bienfeld as his CJA standby counsel.  *See* Section III-B, *infra*. The Court thus construes Defendant's application to be such a request.

### B. Discussion

The CJA was enacted to help ensure that "financially eligible" defendants are provided adequate legal representation throughout the course of criminal justice proceedings.  *See* 18 U.S.C. § 3006(a)(1).  As relevant here, the Act provides for the appointment and payment of counsel who had been previously retained by the defendant: "[i]f at any stage of the proceedings, . . . the court finds that the person is financially unable to pay counsel whom he had retained, it may appoint counsel . . . and authorize payment . . . as the interests of justice may dictate."  18 U.S.C. § 3006A(c); *see also* 18 U.S.C § 3006(A)(d)(3) (providing for waiver of maximum compensation of CJA attorney for "extended or complex representation"); Southern District of New York Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act, § VII-D (May 21, 2012).  As a general matter, however, the decision to appoint standby counsel for a *pro se* defendant is at the trial court's discretion.  *See United States v. Mills*, 895 F.2d 897, 904 (2d Cir. 1990) (holding that a defendant is "not entitled to the appointment of a standby of his own choosing" and that the issue "[is] within the discretion of the [trial] court").

In this case, while the Court finds that the Defendant is financially eligible for CJA appointment and that the complexities of the case warrant standby counsel, it also finds that the interests of justice would not be served by the temporary appointment of Mr. Bienfeld as CJA

standby counsel.  As has been previously observed, "an attorney who fails to make adequate arrangements before accepting representation of a client cannot rely on the CJA to 'bail him out.'"  *See United States v. Zaccaria*, No. 95-cr-97S-29, 1997 WL 642985, at *1 (W.D.N.Y. 1997) (quoting *United States v. James*, 301 F. Supp. 107, 141 (W.D. Tex. 1969)); *see also id.* (noting that if courts held otherwise "needy defendants could sign an unrealistic retainer agreement with counsel of choice then let the tax payers foot the bill for chosen rather than appointed counsel").  In this case, justice simply will not be served by such an appointment given that both the Defendant and Mr. Bienfeld were on notice of the potential scope of Mr. Bienfeld's engagement and of Defendant's financial limitations at the outset, but nonetheless still failed to make adequate arrangements.  *See, e.g.*, *United States v. Parker*, No. 00-cr-0053A, 2004 WL 2095684, at *8 (W.D.N.Y. Sept. 14, 2004), *aff'd*, 439 F.3d 81 (2d Cir. 2006) (denying motion for excess CJA compensation because "[a]s experienced defense attorney, [counsel] was fully aware of the costs involved in [representing the Defendant] . . . . [and] was also fully aware of the extent of [the Defendant's] financial resources"); *see also United States v. Calle*, 178 F. Supp. 2d 309, 309-10 (E.D.N.Y. 2001).  Further, the Court finds that no exceptional circumstances warrant the temporary appointment of Mr. Bienfeld as CJA in this case since he has functioned only as standby counsel to date, and newly-appointed CJA standby counsel will have ample time to become acclimated with the case before trial.  *Cf. Zaccaria*, 1997 WL 642985, at *3 (granting motion for temporary CJA appointment because of "unusual and extenuating" circumstances including counsel's "intimate[] familiar[ity] with [Defendant's] case" and fact that trial was two weeks away)

**IV. Conclusion**

For the foregoing reasons, the Court denies Defendant's motion for reconsideration of its April 23, 2014, Defendant's motion for an order directing the Department of Justice's Office of International Affairs to seek Swiss assistance in arranging the Dr. Mullhaupt deposition, and Defendant's application for the appointment of Mr. Bienfeld as CJA counsel.  (ECF Nos. 112, 114, 119, 124.)

**SO ORDERED:**

Dated: New York, New York
      July 15, 2014

**ANDREW L. CARTER, JR.**
**United States District Judge**

10