UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                  12-cr-647 (PKC)

      -against-                      MEMORANDUM
                                    AND ORDER

MICHAEL LITTLE,

                        Defendant.
-----------------------------------------------------------x
CASTEL, U.S.D.J.

        Defendant Michael Little moves for partial dismissal of the Second Superseding Indictment on the grounds that his prosecution for failure to file individual income tax returns and Reports of Foreign Bank and Financial Accounts ("FBARs") would deprive him of due process of law in violation of the Fifth Amendment to the United States Constitution. Little asserts that at the time of the events charged in the indictment he was a U.K. citizen and a lawful permanent resident of the U.S. He argues that the statutes and regulations requiring U.K. citizens with permanent residence status under U.S. immigration law to file U.S. income tax returns and FBARs, when read in conjunction with the U.S./U.K. Tax Treaty (the "Treaty"), are ambiguous, such that a person of ordinary intelligence lacks notice as to what constitutes compliance with the law. The Court finds that none of the relevant statutes or regulations, whether read in isolation or together, or in conjunction with the Treaty, are so ambiguous that they could properly be found unconstitutionally vague as applied to the charged conduct. Defendant's motion for partial dismissal of the indictment is thus denied.

BACKGROUND

        A grand jury returned a nineteen count Second Superseding Indictment against defendant Little, filed on March 18, 2013, charging him with willful failure to file individual

income tax returns and FBARs, as well various crimes arising out of his alleged assistance of Harry G. A. Seggerman's heirs in a scheme to avoid the taxes due on their inheritance held in undeclared offshore accounts. (Dkt. No. 48.) Little first raised his due process arguments in a letter to the Court dated February 9, 2017. (Dkt. No. 230.) The Court directed the government to respond. (Dkt. No. 231.) The government responded on March 2, 2016, (Dkt. No. 234), Little replied on March 21, 2017, (Dkt. No. 239), and supplemented this submission on April 10, 2017, (Dkt. No. 244.)

DISCUSSION

Defendant Little moves to dismiss Counts One through Eight of the Second Superseding Indictment on the grounds that the statutes and regulations requiring him to file individual income tax returns and FBARs, as well as those attaching criminal liability to such failure, are unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment.

I. <u>Void for Vagueness Standard.</u>

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." <u>United States v. Rybicki</u>, 354 F.3d 124, 129 (2d Cir. 2003) (quoting <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983)). Because the First Amendment is not implicated, the Court assesses Little's challenge as applied, i.e., "in light of the specific facts of the case at hand and not with regard to the statute's facial validity." <u>Id.</u> (quoting <u>United States v. Nadi</u>, 996 F.2d 548, 550 (2d Cir. 1993)). Courts examine as-applied vagueness claims in two steps: "a court must first determine whether the statute gives the person of ordinary intelligence a reasonable

opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." Rubin v. Garvin, 544 F.3d 461, 468 (2d Cir. 2008) (quoting Farrell v. Burke, 449 F.3d 470, 486 (2d Cir. 2006)). The "novelty" of a prosecution does not bolster a vagueness challenge, for the lack of a prior "litigated fact pattern" that is "precisely" on point is "immaterial." United States v. Kinzler, 55 F.3d 70, 74 (2d Cir. 1995).

"A scienter requirement may mitigate a law's vagueness, especially where the defendant alleges inadequate notice." Rubin, 544 F.3d at 467 (citing Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982)). Where "the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." United States v. Tannenbaum, 934 F.2d 8, 12 (2d Cir. 1991) (quoting Screws v. United States, 325 U.S. 91, 102 (1945) (plurality opinion)) (Bank Secrecy Act provision requiring reporting by financial institutions not void for vagueness when applied to an individual because the Act defined financial institutions to include "[a] person who engages as a business in dealing in or exchanging currency" and defendant knew he was "committing a wrongful act.")

The Court must conduct separate inquiries into the underlying statutes and regulations and then into the statutes imposing criminal penalties for certain types of violations of these statutes and regulations. First, the Court finds that the U.S. statutes and regulations that require alien lawful permanent residents (green card holders) to either (a) file a tax return and pay taxes on worldwide income, or (b) file a tax return reporting worldwide income and indicate that he or she is taking a particular protection under the Treaty, are not unconstitutionally vague as applied. Second, the Court finds that the statutes providing for criminal sanctions against

individuals who violate these obligations are not vague as applied to alien lawful permanent residents.

II.     U.S. Tax and Reporting Obligations for Alien Lawful Permanent Residents.

An alien individual who is a lawful permanent resident of the United States is treated as a resident of the United States for tax payment and reporting purposes. 26 U.S.C. § 7701(b)(1)(A). This treatment applies regardless of whether the individual is physically present in the U.S. or not. An individual is a lawful permanent resident of the U.S. if the individual has been lawfully accorded the privilege of residing permanently in the U.S. as an immigrant in accordance with the immigration laws, as long as this status has not been revoked or administratively or judicially determined to have been abandoned. 26 U.S.C. § 7701(b)(6). In 2008 Congress amended 26 U.S.C. § 7701(b)(6) to add the following language:

> An individual shall cease to be treated as a lawful permanent resident of the United States if such individual commences to be treated as a resident of a foreign country under the provisions of a tax treaty between the United States and the foreign country, does not waive the benefits of such treaty applicable to residents of the foreign country, and notifies the Secretary of the commencement of such treatment.

26 U.S.C. § 7701(b)(6)(B).

Under 26 U.S.C. § 6012 and 26 C.F.R. § 1.6012-1, a U.S. resident is required to file an income tax return each year on a Form 1040.

An individual who is a U.S. resident as well as a resident of a foreign country is a dual resident. If the U.S. is party to a tax treaty with the foreign country of which the dual resident is also a resident, then that treaty will determine the residency status of that resident.

The U.S. is party to a tax treaty with the U.K.: the Convention between the Government of the United States of America and the Government of the United Kingdom of

Great Britain and Northern Ireland for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and on Capital Gains, effective July 24, 2001. The residence provisions of the Treaty, or "tie breaker rules," dictate that, for the purposes of the taxation of worldwide income, when an individual is a dual resident of the U.S. and U.K.:

> a) he shall be deemed to be a resident only of the State in which he has a permanent home available to him; if he has a permanent home available to him in both States, he shall be deemed to be a resident only of the State with which his personal and economic relations are closer (centre of vital interests);
> b) if the State in which he has his centre of vital interests cannot be determined, or if he does not have a permanent home available to him in either State, he shall be deemed to be a resident only of the State in which he has an habitual abode;
> c) if he has an habitual abode in both States or in neither of them, he shall be deemed to be a resident only of the State of which he is a national;
> d) if he is a national of both States or of neither of them, the competent authorities of the Contracting States shall endeavour to settle the question by mutual agreement.

Treaty, art. IV, § 4. Explicitly excluded from this treatment are taxes due to either State by "any person who is liable to tax in that State in respect only of income from sources in that State or of profits attributable to a permanent establishment in that State." Id. at art. IV, § 1.

A dual resident of the U.S. and the U.K. may claim benefits under the Treaty and be treated as a nonresident alien for the purposes of computing his U.S. federal income tax liability. To receive such treatment, the individual must file a Form 1040NR:

> An alien individual . . . who determines his or her U.S. tax liability as if he or she were a nonresident alien shall make a return on Form 1040NR on or before the date prescribed by law (including extensions) for making an income tax return as a nonresident. The individual shall prepare a return and compute his or her tax liability as a nonresident alien. The individual shall attach a statement (in the form required in paragraph (c) of this section) to the Form 1040NR. The Form 1040NR and the attached statement,

> shall be filed with the Internal Revenue Service Center,
> Philadelphia, PA 19255.

26 C.F.R. § 301.7701(b)-7(b). The individual must also file as an attachment to his or her Form 1040NR a completed Form 8833 (Treaty-Based Return Position Disclosure). 26 C.F.R. § 301.7701(b)-7(c).

The filing of this Treaty-Based Return Position Disclosure is also mandated as part of a separate and independent reporting obligation pursuant to 26 U.S.C. § 6114:

> (a) Each taxpayer who, with respect to any tax imposed by this title, takes the position that a treaty of the United States overrules (or otherwise modifies) an internal revenue law of the United States shall disclose (in such manner as the Secretary may prescribe) such position—
>    (1) on the return of tax for such tax (or any statement attached to such return), or
>    (2) if no return of tax is required to be filed, in such form as the Secretary may prescribe.

Thus, the filing of Form 8833 satisfies the reporting requirements of both 26 C.F.R. § 301.7701(b)-7(b) and 26 U.S.C. § 6114 with respect to disclosing that the filing individual is taking a Treaty position. See 26 C.F.R. § 301.7701(b)-7(d).

For further clarification regarding filing requirements, 26 C.F.R. § 301.7701(b)-7(e) sets forth examples to illustrate the application of these rules and the tax and reporting obligations of individuals who do or do not take a Treaty position.

III.    The Tax and Reporting Obligations Applicable to Alien Permanent Residents are not Void as Applied.

  A.   Failure to File Tax Returns.

Little argues that the 2008 amendment to 26 U.S.C. § 7701(b)(6), when read in conjunction with the Treaty, created an ambiguity regarding a permanent resident's tax and reporting obligations. (Def.'s Reply in Supp. of Mot. to Dismiss, March 21, 2017, Dkt. No. 239

("D.'s Reply") at 2.) He argues that this amendment brought the law into compliance with the Treaty, which states:

> An individual who is a United States citizen or an alien admitted to the United States for permanent residence (a 'green card' holder) is a resident of the United States only if the individual has a substantial presence, permanent home or habitual abode in the United States and if that individual is not a resident of a State other than the United Kingdom for the purposes of a double taxation convention between that State and the United Kingdom.

Treaty, art. 4 § 2. Little argues that because he was only temporarily in the U.S. between 2005-2008, this language from the Treaty would lead a person of ordinary intelligence to believe that he was not a resident of the U.S. for tax purposes. (D.'s Reply at 2.) Little also argues that the Court should not interpret any subsequently passed legislation or regulation as having modified the Treaty, citing <u>TWA v. Franklin Mint Corp.</u>, 466 U.S. 243, 252 (1984) ("A treaty will not be deemed to have been abrogated or modified by a later statute unless such purpose on the part of Congress has been clearly expressed."). (D.'s Reply at 3.)

Little cites several more provisions of the Treaty that he claims are inconsistent with the above described tax and reporting obligations imposed by U.S. statutes and regulations, arguing that an alien lawful permanent resident of ordinary intelligence would be unclear as to what was needed to comply with the law. He cites, among other portions of the Treaty, Article 25, which states:

> Nationals of a Contracting State shall not be subjected in the other Contracting State to any taxation or any requirement connected therewith that is more burdensome than the taxation and connected requirements to which nationals of that other State in the same circumstances, particularly with respect to taxation on worldwide income, are or may be subjected.

Treaty, art. 25, § 1.

Little appears to interpret this language to mean that a U.K. national cannot be subject to any requirement in the U.S. that is more burdensome than that which that person would be subject to in the U.K. (D.'s Reply at 4.) Little's interpretation is erroneous. A plain reading of the forgoing language is that a U.K. national cannot be subject to requirements in the U.S. that are more burdensome than those that U.S. nationals are subject to within the U.S. Thus, Little's contention that failure to file tax returns in the U.K. is not a criminal offence is irrelevant.

Little goes on to argue that even under U.S. law the penalty for failing to disclose a Treaty position is a financial penalty, not the denial of Treaty benefits, citing 26 U.S.C. § 6712 (imposing a $1,000 penalty for failure to comply with 26 U.S.C. § 6114). (Id. at 3.) He further argues that failure to disclose that one is taking a Treaty position does not prohibit one from doing so, citing Pekar v. Commissioner, 113 T.C. 158, 161 n.5 (1999) ("A taxpayer who fails in a material way to disclose one or more positions taken for a taxable year is subject to a separate penalty for each failure to disclose a position. However, there is no indication that this failure estops a taxpayer from taking such a position.") (internal citations omitted).

Little also cites language in Articles 3, 5, 7, and 26 of the Treaty, which he argues exempt the income he made working in the U.S. from taxation by the U.S. (D.'s Reply at 4.)

Little's arguments lack merit. Based on the above cited statutes and regulations, an alien lawful permanent resident of ordinary intelligence would know that he or she needed to either (a) file a tax return and pay taxes on worldwide income, or (b) file a tax return reporting worldwide income and indicate that he or she is taking a particular protection under the Treaty. An individual's obligation to pay taxes on either his income earned while in the U.S., or his

worldwide income, is irrelevant to his or her obligation to disclose such income and report it pursuant to the above discussed statutes and regulations.

The U.S. statutes and regulations giving rise to these obligations are thus not void as applied to the conduct with which Little is charged in the Second Superseding Indictment. Dicta in a decades-old Tax Court case does not render the obligations imposed on Little by these statutes and regulations unconstitutionally vague.

Little's argument that the failure to take a Treaty position can result only in a financial penalty also lacks merit. 26 U.S.C. § 6712(c) expressly states that "[t]he penalty imposed by this section shall be in addition to any other penalty imposed by law."

Little also contends that he was informed by Her Majesty's Revenue and Customs that he was a U.K. tax resident pursuant to the Treaty and thus not required to file U.S. tax returns. (Def.'s February 9, 2017 Letter, Dkt. No. 230 at 2.)

Advice of counsel is an affirmative defense that must be based in fact and raised at trial by the defendant, who must prove that he "(1) 'honestly and in good faith' sought the advice of counsel; (2) 'fully and honestly la[id] all the facts before his counsel'; and (3) 'in good faith and honestly follow[ed]' counsel's advice, believing it to be correct and intending that his acts be lawful. United States v. Colasuonno, 697 F.3d 164, 181 (2d Cir. 2012) (quoting Williamson v. United States, 207 U.S. 425, 453 (1908)) (alternations in original). It remains to be determined whether information from a U.K. tax official can qualify as advice of counsel.

Under the present circumstances, no advice that Little may have received from U.K. tax authorities affects the void for vagueness analysis of his duty to file U.S. tax returns.

B.  <u>Failure to File FBARs.</u>

Both Little and the Government agree that the Treaty does not affect any individual's obligation to file FBARs and that the 2007 and 2008 FBAR forms provided that FBARs were to be filed by "citizen[s] or resident[s] of the United States, or a person in and doing business in the United States." (Gov.'s Opp. to Mot. to Dismiss, March 2, 2017, Dkt. No. 234 ("Gov.'s Opp.") at 11; D.'s Reply at 4.) However, Little contends that IRS announcements 2009-51 and 2010-51 suspended the requirement for a person "in and doing business in the United States" to file and FBAR. (D.'s Reply at 4.) Internal Revenue Bulletin: 2009-51, "Temporary Suspension of FBAR filing Requirements for Persons who are not Citizens, Residents, or Domestic Entities," June 22, 2009, stated:

> [A]ll persons may rely on the definition of 'United States person' found in the instructions for the prior version of the FBAR (the July 2000 version) to determine whether they have an obligation to file an FBAR. The definition of 'United States person' from the prior version is as follows: . . . The term 'United States person' means (1) a citizen or resident of the United States, (2) a domestic partnership, (3) a domestic corporation, or (4) a domestic estate or trust.

Prior to February 24, 2011, the FBAR regulations did not define the term "U.S. resident." Internal Revenue Manual 4.26.16.3.1.2(1). "For FBARs required to be filed June 30, 2011 or later, 31 C.F.R. § 1010.350(b) defines 'United States resident' using the definition of resident alien in IRC 7701(b)," which includes green card holders such as Little. Internal Revenue Manual 4.26.16.3.1.2(2)(1).

For FBARs due before the June 22, 2009 announcement, there does not appear to be any ambiguity regarding the duty to file for persons 'in and doing business in the United States.' Even before the term 'United States resident' was defined by FBAR regulations, it appears likely that an alien lawful permanent resident of ordinary intelligence not 'in or doing

- 10 -

business in' the U.S. would have understood themselves to be under an obligation to file an FBAR based on the definition of 'United States resident' in other parts of the U.S. code and regulations. To the extent that there was any ambiguity regarding this duty, that ambiguity is remedied for the purposes of this void for vagueness analysis by the fact that criminal penalties only apply to a failure to file an FBAR if such failure to file was willful, as will be discussed below.

IV.     The Relevant Criminal Statutes as Applied are not Void for Vagueness.

Little argues that Counts One through Eight of the Second Superseding Indictment must be dismissed pursuant to the void for vagueness doctrine of the Due Process Clause of the Fifth Amendment. Count One of the Second Superseding Indictment charges Little with Obstructing and Impeding the Due Administration of Internal Revenue Laws in violation of 26 U.S.C. § 7212(a); Counts Two through Seven charge Little with Failure to File Individual Income Tax Returns for Tax Years 2005-2010 in violation of 26 U.S.C. § 7203; Count Eight charges Little with Willful Failure to File Reports of Foreign Bank and Financial Accounts in violation of 31 U.S.C. § 5322(a). Because a person of ordinary intelligence would understand that these statutes impose criminal penalties on persons engaging in the conduct in which Little is alleged to have engaged, these statutes are not void for vagueness as applied to Little.

26 U.S.C. § 7212(a) makes it unlawful to "corruptly . . . obstruct[] or impede[], or endeavor[] to obstruct or impede, the due administration of" the Internal Revenue Code. 26 U.S.C. § 7212(a). "To act or endeavor 'corruptly,' within the meaning of this section, means to act or endeavor 'with the intent to secure an unlawful advantage or benefit either for one's self or for another.'" United States v. Parse, 789 F.3d 83, 121 (2d Cir. 2015) (quoting United States v. Kelly, 147 F.3d 172, 177 (2d. Cir. 1998)).

Count One, paragraph nine of the Second Superseding Indictment alleges that Little took six separate actions, in addition to failing to file FBARs and tax returns, that violated Section 7212(a) in connection with the alleged scheme to avoid the taxes due on the Seggerman heirs' inheritance, and the government represents it intends to rely on those actions rather than on the failure to file tax returns or FBARs. (Gov.'s Opp. at 14-15.) A person of ordinary intelligence would understand that conduct of the type alleged in paragraph nine would expose an individual to criminal penalties for obstruction under the meaning of section 7212(a). Thus, there is no void for vagueness issue with respect to Little's prosecution for obstruction of the internal revenue laws.

26 U.S.C. § 7203 makes it unlawful for "[a]ny person required under [Title 26] to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, [to] willfully fail[] to pay such estimated tax or tax, make such return, keep such records, or supply such information . . . ." In Section 7203 and other statues prohibiting tax evasion, "the word 'willfully' . . . generally connotes a voluntary, intentional violation of a known legal duty." United States v. Bishop, 412 U.S. 346, 360 (1973). The Supreme Court has "formulated the requirement of willfulness as bad faith or evil intent, or evil motive and want of justification in view of all the financial circumstances of the taxpayer, or knowledge that the taxpayer should have reported more income than he did." Id. (internal citations and quotation marks omitted).

31 U.S.C. 5322(a) makes it unlawful to "willfully violat[e]" 31 U.S.C. §§ 5311 et seq., "or a regulation prescribed or order issued" thereunder, including 31 C.F.R. § 1010.350, which requires certain individuals to file FBARs. Thus, to be convicted under Section 5322(a) for violating the requirement to file an FBAR, a defendant must know of his duty to file but

intentionally fail to do so anyway.  See United States v. Sturman, 951 F.2d 1466, 1476 (6th Cir. 1991) (defining "willfulness" in prosecution for failure to file records and reports of foreign financial agency transactions as the "voluntary, intentional violation of a known legal duty"); United States v. Eisenstein, 731 F.2d 1540, 1543 (11th Cir. 1984) ("[A]s it is used in the currency reporting statute, the term *willful* require[s] proof of the defendant's knowledge of the reporting requirement and his specific intent to commit the crime.") (internal quotation marks omitted) (alterations and emphasis in original); United States v. Granda, 565 F.2d 922, 925-26 (5th Cir. 1978) ("[T]he terms knowing and willful require proof of the defendant's knowledge of the reporting requirement and his specific intent to commit the crime. Congress, by adding these terms, took this regulatory statute out of the ranks of strict liability type crimes."); United States v. San Juan, 545 F.2d 314, 318 (2d Cir. 1976) ("Without proof of any knowledge of, or notice to, Mrs. San Juan of the reporting requirements, a jury could not determine beyond a reasonable doubt that she had the requisite willful intent.").

Thus, conviction pursuant to each of these statutes requires the government to prove beyond a reasonable doubt that Little acted willfully with respect to the failure to file tax returns and FBARs, and corruptly with respect to the obstruction of the internal revenue laws. As described above, the presence of this scienter requirement undercuts any due process void for vagueness challenge.  Because a conviction may only be obtained only if the government proves, beyond a reasonable doubt, that the defendant knew he was legally required to file tax returns or file an FBAR, and so knowing, intentionally did not do so with the knowledge that he was violating the law, he cannot complain that he could be convicted for actions that he did not realize were unlawful.  See, e.g., 3 L. Sand, et al., Modern Federal Jury Instructions, Criminal Inst. 50B-11 at 50B-16 (2013) ("A willful violation of this reporting requirement can only occur

if the government proves beyond a reasonable doubt that the defendant knew of the reporting requirement and that the defendant acted with the specific intent to violate that requirement.")

CONCLUSION

Neither the legal obligation for alien lawful permanent residents of the U.S. to file tax returns or FBARs, nor the statutes criminalizing such failure, nor the statute prohibiting the obstruction of the internal revenue laws, are vague as applied to Little's alleged conduct. A person of ordinary intelligence would know if his or her actions conformed to law. Defendant's motion to dismiss Counts One through Eight of the Second Superseding Indictment is DENIED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 239.)

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
May 3, 2017