IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | &#124; | 12 Cr. 647 (PKC) |
| | &#124; | |
| v. | &#124; | The Hon. P. Kevin Castel |
| | &#124; | |
| MICHAEL LITTLE, | &#124; | |
| | &#124; | Filed via ECF |
| Defendant. | &#124; | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTIONS *IN LIMINE***

MICHAEL J. LITTLE
*Pro Se*

SEAN M. MAHER
*Standby Counsel for Michael J. Little*

# TABLE OF CONTENTS

I.   Foreign financial records ……………….…………………………… 1

II.  Co-Conspirator statements …………….….…………………………. 4

III. Seggerman handwritten note …………………………………….… 5

IV.  Tax document …………………………………………………. 5

V.   Defendant's Arrest …………………………..……… 6

VI.  Bias and motives of investigator …………………………………………… 6

VII. Defendant's Statements regarding evidence and punishment ……..…….… 8

VIII. Defendant's Prior Relevant Statements ….….…………………….. 8

IX.  Defendant's good acts ………..… 9

X.   The Rule 15 deposition …………….…… 10

XI.  Government Allegations of Immigration Fraud …………………… 10

XII. Notice of Production/Advice of Counsel …………… 11

Conclusion   ………………………………………………………………… 11

1.  **FOREIGN FINANCIAL RECORDS**

    **REICHMUTH**

    The Government indicates it intends to offer records from Reichmuth that include thousands of bank account and other records for Lixam Provisio, Ltd, Pizita Ltd and Yomani Ltd. The Government, through AUSA Okula, lied to the Court on May 11, 2012 and stated the Defendant controlled Pizita. Pizita is a trust has always been controlled by the Henry, John, Yvonne and Suzanne Seggerman ("the Siblings") for the benefit of her handicapped sister Patricia Seggerman.

    The Defendant and Dr. Müllhaupt are the directors of Lixam Provisio Ltd., the corporate trustee of the Lixam Trust. Müllhaupt & Partner's trust department administers Lixam affairs. Dr. Müllhaupt holds legal, not beneficial ownership of Lixam, as the custodian of its sole bearer share. Herr Urs Beck was the Reichmuth account manager responsible for the Lixam account.

    Yomani Ltd. is the trust controlled by Yvonne Seggerman. The Government is fully aware, and, can adduce no evidence the Defendant had no involvement at any time with the settlement, management or investment of Pizita and Yomani. Müllhaupt & Partner provided trust and investment services to Pizita and Yomani, presumably on behalf of the siblings.

    Herr Beck was also the Reichmuth account manager responsible for Yomani and Pizita. Reichmuth's records contain the rubric 'Working Translation' presumably indicating they were unofficially translated from the original German.

    On September 9, 2009. Herr Beck made a record of a telephone conversation with Dr. Müllhaupt who confirmed Yvonne Seggerman, Yomani's beneficial owner, had declined to disclose her ownership of Yomani to the IRS and was preparing to commit tax fraud. A crime she ultimately pleaded guilty to. The record is attached hereto as Exhibit A.

    **ARGUMENT**

    The provisions of the Confrontation Clause are sprung by the introduction of all the Reichmuth records. Herr Beck's live testimony is required to differentiate Lixam from Yomani

2

and Pizita. Herr Beck's knowledge of Yvonne Seggerman's planned criminal behaviour requires its full exploration, by way of live testimony, before the jury.

"The Second Circuit has explained that an out-of-court statement is testimonial only "when it is made with the primary purpose of creating a record for use at a later criminal trial." *United States v. James*, 712 F.3d 79, 96 (2d Cir. 2013).

"We think it sufficient to conclude that we must [*96] rely on Supreme Court precedent before Williams to the effect that a statement triggers the protections of the Confrontation Clause when it is made with the primary purpose of creating a record for use at a later criminal trial. See *Melendez-Diaz*, 557 U.S. at 310-11; Bryant, 131 S. Ct. at 1155; see also *Bullcoming*, 131 S. Ct. at 2716; *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006); *Crawford*, 541 U.S. at 51-52. Ct. at 2716; *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006); *Crawford*, 541 U.S. at 51-52. *United States v. Mallay*, 712 F.3d 79, 95-96, 2013 U.S. App. LEXIS 6259, *35"

By permitting the government to present evidence of potentially unlawful conduct by Herr Beck and others, totally unrelated to the charges against the Defendant in this case, will confuse the jury and invite an improper inference of "guilt by association." See, e.g., *United States v. DeCicco,* 435 F.2d478, 483 (2d Cir. 1970) ("prior similar acts of misconduct performed by one person cannot be used to infer guilty intent of another person who is not shown to be in any way involved in the prior misconduct, unless it be under a 'birds of a feather' theory of justice. Guilt, however, cannot be inferred merely by association."); *United States v. Wassner*, 141 F.R.D. 399, 405 (S.D.N.Y. 1992) (denying government motion to admit evidence that defendant's alleged co-conspirators had committed offenses in which defendant had no involvement, reasoning that "[g]uilt by association is just what Fed. R. Evid. 403 was intended to exclude"); see also, e.g., United *States v. Polasek*, 162 F.3d 878, 884 n.2 (5th Cir. 1998) (reversing criminal conviction and holding that, under Fed. R. Evid. 402 and 403, trial court should not have permitted government to present evidence of offenses that defendant's business associates committed, but in which defendant was not involved).

**UK TAX RECORDS**

The UK tax records are inadmissible without authentication and the provision of expert evidence to explain to the jury the obligations of a UK taxpayer. The Government has provided neither authentication or given notice that it will intends to call a qualified expert at trial.

The UK tax records do not constitute evidence pursuant to FRE 404(b). see generally Defendant's motion to preclude Government's FRE 404 (b) Admission Memorandum of Law, Dkt. No. 292.

**II    CO-CONSPIRATOR STATEMENTS**

It is respectfully submitted that the Defendant is unable to respond to a speculative Government 'expectation' as to statements it may offer as co-conspirator statements.

No 3500 material has been provided and therefore the Defense is unable to comment or object as to whether these 'yet-unseen' statements were made in furtherance of the alleged conspiracy.

In *United States v. Bertolotti*, 529 F.2d 149, 157 (2d Cir. 1975), the Second Circuit reversed a conviction for conspiracy to distribute narcotics where, under the guise of its single conspiracy theory, the Government subjected each of the seven appellants to voluminous testimony relating to unconnected crimes in which he took no part." The *Bertolotti* court also held that it was improper for the trial court to admit phone call recordings that did not mention the defendants and had "no relevance to any of the other transactions proved at trial." Id. at 158. See also *United States v. Johansen*, 56 F.3d 347, 352 (2d Cir. 1995) (finding prejudice based on "explicit invitation to the jury to consider the acts of one conspirator against another."); *United States v. Barret*, No. 10-CR-809, 2012 WL 171321, at *3 (E.D.N.Y. Jan. 20, 2012) (denying government motion to admit text messages where "the text messages could be construed as evidence of a separate and factually distinct conspiracy.").

It is submitted that the Government's application is premature, and, at a minimum, the Defense would require specific notice of each statement the Government intends to offer and all relevant 3500 material.

4

### III    SEGGERMAN HAND WRITTEN NOTES

The Government have not identified the notes, it intends to introduce at trial. Accordingly, it is premature for the Defense to undertake a complete FRE,402, 403, 801 and 6th Amendment analysis until all 3500-material related to the notes has been provided.

Defense is unable to ascertain how, where and when each of the inchoate statements allegedly recorded in the notes were made and by whom. Whether these notes were made in the course of a conspiracy and/or were they enlarged and adulterated to suit the makers purpose after her tax fraud was uncovered.

It is submitted the Court should defer making a specific ruling on the notes until relevant evidence is developed at trial.

### IV   TAX DOCUMENTS

The Government account detailing the Defendant's alleged false representation to Jim Rollison, the Accountant and Doug Stein, the tax lawyer, is demonstrably false. See Dkt. No. 66-1 containing Rollison's note confirming Defendant informed Rollison during their first conversation that Anne Seggerman was receipt of payments from a Swiss trust.

On March 5, 2013, Stein sent the following, in an email[1], to Defendant in response to a request that Stein provide an affidavit:

**"I have not reviewed the e-mail trail from SGR but, as it pertains to the 3520 I will detail that based on the information given to me that there was trust offshore for the benefit of Ann that a 3520 should have been filed. That a 3520 must be filed when a US beneficiary receives a distribution from an offshore trust. I made that recommendation, reviewed 3520s prepared by an accounting firm and suggested language for all parties to use.**

---

[1] Attached hereto as Exhibit B is the email string.

**Filing the 3520 was a direct result of my advice."**

"Assuming arguendo that the account transcripts contain hearsay, the district court properly admitted them under the business records exception to the hearsay rule. See Fed. R. Evid. 803(6). HN7 "A business record may include data stored electronically . . . and later printed out . . . so long as the 'original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice.'" *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp*., 38 F.3d 627, 632 (2d Cir. 1994) (quoting *United States v. Hernandez,* 913 F.2d 1506, 1512-13 (10th Cir. 1990)) *United States v. D'Agostino,* 638 Fed. Appx. 51 at 55. Accordingly, the documents appended to the Form 3520's should be admitted in evidence.

**V    DEFENDANT'S ARREST**

**The Government's Motion Seeks to Exclude Relevant Evidence**

The government's list of subjects for preclusion draws in many that will be relevant at trial. Relevant evidence should not be excluded to accommodate unjustified concerns in the abstract about impermissible arguments that are merely feared. The Court should hesitate to rule out in advance subjects that may be relevant.

The Defendant is unable to predict the evidence likely to be adduced at trial without receipt of 3500 material. The right to present to the Court, *ex parte,* as to why such evidence would be admissible needs be preserved and the Government is not entitled to prematurely curtail that right.

**VI   BIAS AND MOTIVE OF INVESTIGATORS**

The Confrontation Clause entitles a defendant to cross-examine about a witness' potential bias.  *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *United States v. Abel*, 469 U.S. 45, 50 (1984). Thus, while trial judges have wide latitude to regulate the extent and scope of witness examinations, they have no discretion to prohibit relevant bias cross-examination of a government witness. *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).  "Bias is always a

proper subject of cross-examination" because bias refers to the witness' specific animosity against a party or his motive to lie about events on trial, matters which are always central to the jury's determination. *Davis*, 308 U.S. at 316. Trial court discretion comes into play only after the trial court permits inquiry sufficient to expose the facts necessary to support the bias theory. *Davis*, 415 U.S. at 318.

The Supreme Court has made it clear that once a defendant identifies facts that may give rise to a prototypical form of bias in the witness, meaningful confrontation of the witness with those facts is constitutionally required:

> "We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and hereby "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska*, 415 U.S. at 318.

*VanArsdall*, 475 U.S. at 680.

Because exposure of facts indicative of bias is central to the right of confrontation, there are no exceptions for facts that may embarrass the witness. *Davis*, 308 U.S. at 319-20. (Juvenile delinquent's statutory shield of confidentiality must give way); *Olden v. Kentucky*, 488 U.S. 227 (1988) (rape complainant's interracial sexual relationship with third party proper subject of bias cross-examination, notwithstanding government's claim of undue prejudice).

Here, the bias and mendacity of AUSA Okula, while he was responsible for prosecuting this case, are a matter of judicial and public record and pursuant to settled law as detailed above, the Defendant is entitled to call him as a witness.

The Government have informed the Defendant, AUSA Okula is no longer prosecuting this matter. The Defendant is entitled to examine him in respect of his potential bias pursuant to the provisions of the Sixth Amendment. AUSA Okula was branded "a liar and a liar for the rest of your life[2]" by Judge Duffy, the penultimate presiding Judge in this case. The extraordinary nature of this finding by the Court and the consequential requirement for AUSA Okula to appear in Court with supervision reinforces the need for an examination of how his mendacity may have tainted other witnesses' testimony.

---

[2] Dkt. No. 158; Dec. 4, 2014 page 9, lines 2-3.

"Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony. The "common law of evidence" allowed the showing of bias by extrinsic evidence, while requiring the cross-examiner to "take the answer of the witness" with respect to less favored forms of impeachment". *See generally* McCormick on Evidence, supra, § 40, at 89; Hale, Bias as Affecting Credibility, 1 Hastings L. J. 1 (1949)." *United States v. Abel*, 469 U.S. 45 at 52.

**VII     DEFENDANT'S STATEMENTS REGARDING EVIDENCE AND PUNISHMENT**

The Defendant, assisted by his standby counsel undertakes to follow all relevant rules during the trial, as he has over the past six years since his arrest.

Of course, instances of proper impeachment, which do not require the introduction into evidence of any document, may entail confronting a witness with "contents of documents not in evidence." *Cf.* Gov. Memo. at 22.  The right is reserved by the Defense to conduct examinations in any manner countenanced by the rules of evidence and by any directives of the Court.

**VIII    DEFENDANT'S PRIOR RELEVANT STATEMENTS**

This issue is not ripe for adjudication because (i) all Government exhibits have not been provided to date and (ii) no statements have been provided. It is submitted it is premature of the Government to request a blanket bar until all possible bases of admission are presented to the Court.

At a minimum, the Government should be required to provide specific notice for each statement or document the Government intends to try to preclude. The Court is requested to delay specific ruling until the relevant evidence is developed at trial.

## IX  DEFENDANT'S GOOD ACTS

The government asks the Court to exclude evidence of Defendant's good acts. But Defendant's altruistic activities are a large component of his background and a critical element of I am as a person; during the relevant time, I devoted a considerable amount of my time assisting alcohol and drug addicted persons to find recovery, including helping prisoners at Sing prison on a bi-monthly basis during my sojourn in New York. It is "customary for the defendant to introduce evidence concerning his background, such as information about his education and employment." I Federal Trial Handbook Criminal § 28:22 (4th ed. 2011) (citing *United States v. Blackwell,* 853 F.2d 86 (2d Cir. 1988)). In *Blackwell*, the Second Circuit held it proper to present evidence "about the defendant as a person, and his experience in life." Id. at 88. The relevance of such background evidence is made clear by the Advisory Committee notes to Rule 401, quoted by the Second Circuit in *Blackwell*: "Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding." Id. at 88.

There is no reason to rule out in this case background evidence of a kind that is universally admitted. The defense has the right to inform the jury of who I am, including my education, employment, and charitable and altruistic activities. The government should not be permitted to attempt to define me to the jury in a way favorable to the government's case by creating a false and incomplete impression. And beyond its admissibility as background evidence, my altruistic work during the charged conspiracy period is likely to be relevant to explain my actions, and relevant on the issues of motive and intent to counter the indictment's allegation that I may have been motivated to engage in criminal conduct by financial considerations. There is absolutely no ground for excluding such relevant and important evidence, now or at trial. See *United States v. Fazio*, 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012) (denying as premature government's motion *in limine* to preclude evidence of defendant's charitable deeds, subject to development of evidence at trial).

**X        RULE 15 DEPOSITION**

The Government flouted representations made by AUSA Okula it would confer with the Defense before seeking judicial intervention on the final version of the Rule 15 transcript to be admitted at trial. Defense maintains that it made proper objections during the Rule 15 deposition that should be upheld by the Court. However, the Government should not be allowed to waste Court time unnecessarily and be required by the Court to adhere to its prior undertaking[3].

The Government objections reference pages and subject matter, but this level of ambiguity is not helpful, the Defense need to know word for word what the Government is trying to excise from the record.

The Government should be required to provide defense with a red-lined transcript of exactly what it believes should be excised or redacted from the trial record – there may be points of agreement, but Defense can't unequivocally state a position until it sees the exact words or specific passages in dispute.

Defense proposes that any unresolved transcript issues be presented to the Court by Feb. 23, 2018, including unresolved 3505 issues in respect of Government Exhibits.

**XI       GOVERNMENT ALLEGATIONS OF IMMIGRATION FRAUD**

The remoteness, at a distance of 46 years, of these allegations, raise substantial issues under the provisions of FRE 403 and the Sixth Amendment Confrontation Clause

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Under this rule, even if there were a basis to admit evidence of the July 29 Call as direct evidence of the charged offenses or under Rule 404(b), such evidence "must not have its probative value substantially outweighed by its prejudicial effect." *Scott*, No. 10-3978-Cr., 2012 WL 1143579, at *10. "Evidence is unfairly prejudicial when it tends to have some adverse effect upon a defendant beyond tending to prove

---

[3]

the fact or issue that justifies its admission into evidence." *United States v. Curley*, 639 F.3d 50, , 57 (2d Cir. 2011) (internal quotation marks omitted). "lithe other acts tend to prove a fact not in issue or to excite emotions against the defendant, they create a prejudicial effect." Id. It is incumbent on the district court to "make a conscientious assessment of whether unfair prejudice substantially outweighs probative value," and not simply assume that evidence passes Rule 403 muster. *Scott*, No. 10-3978-Cr., 2012 WL 1143579, at *10 (internal quotations marks omitted).

Here, there is no evidence of immigration fraud by the Defendant. The sponsors for my application were of substantial means and an immature and impulsive act made when I had barely turned 21 years old could hardly be considered evidence concerning my character for truthfulness.

The Court is requested to deny the introduction of any reference to matters in respect of my unfortunate marriage in 1971 into evidence by the Government by way of cross-examination or at all.

## XII    NOTICE OF PRODUCTION/ADVICE OF COUNSEL

Notice of production of documents in respect of advice of counsel defense was provided to the Government on February 4, 2108.

### CONCLUSION

For the reasons more fully detailed above, the Defendant respectfully requests : (i) the Court deny the introduction of the Lixam, Pizita and Yomani documents; deny the introduction of Defendant's UK tax records; (ii) deny the introduction of various co-conspirator statements; (iii) deny the introduction of Yvonne Seggerman's notes; (iv) allow the documents appended to the Form 3520 filings into evidence; (v) allow the Defendant to introduce evidence as to the circumstances of his arrest; (vi) adduce evidence as to prosecutorial bias, including calling AUSA Okula as a witness as to bias; (vii) allow the Defendant, as far as it is permitted by the Rules to introduce all relevant evidence as required for the purpose of impeachment at trial; (viii) deny the Government a blanket bar on the admission of the Defendant's prior statements absent specific notice as to the statement the Government intends to apply to preclude; (ix) deny

the Governments request to preclude evidence of Defendant's good acts; (x) require the Government to provide a red-lined transcript of the Donna Francis Deposition and order the Parties to submit any unresolved transcript or 3505 issues to the Court for adjudication by February 23, 2018;and  (xi) deny the Government's request to adduce any evidence in respect of Defendant's marriage to Martha Stoker in 1971.

Dated:  New York, New York
        February 5, 2018

                        Respectfully submitted,

                              -/s/-
                        _____
                        MICHAEL J. LITTLE     *Pro Se*
                        SEAN M. MAHER, ESQ. *Standby Counsel*