Michael J. Little         Member of Lincoln's Inn
King's Bench Chambers
10-11 Basepoint Business Centre
Christchurch, Dorset, BH23 6NX
United Kingdom

May 1, 2018

By ECF

The Honorable P. Kevin Castel
United States District Judge
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Defendant's Letter-Motion for a Judgment of Acquittal
Pursuant to F.R.Crim.P. Rules 29(a) and 29(c)(1)**
*United States of America v. Michael Little*
Docket No. 12-cr-0647 (PKC)

Dear Judge Castel,

      Defendant respectfully submits this memorandum of law in support of a motion for a judgment of acquittal pursuant to both Rules 29(a) and 29(c)(1) of the Federal Rules of Criminal Procedure as to: (a) Counts One, obstructing the IRS; Counts Two through Seven, failure to file income tax returns; Count Eight, failure to file FBAR reports; Count Nine, Conspiracy to defraud the United States, and Counts Ten through Nineteen: aided and assisted in preparation of false tax returns.

## ARGUMENT

### 1. A Judgment of Acquittal Should Be Granted as to All Counts in the Indictment

      A judgement of acquittal in respect of Count One should be granted because the Government failed to provide any evidence I acted corruptly to secure an unlawful advantage for myself and failed to prove I knowingly and deliberately engaged in an affirmative act to obstruct a foreseeable tax-related proceeding.

      A judgement of acquittal in respect of Counts Two through Seven should be granted because the Government failed to prove my failure to file income tax returns was knowing and willful.

      A judgement of acquittal in respect of Count Eight should be granted because the Government failed to provide any evidence I knew of the requirement to file FBAR reports and acted with the specific intent to avoid the requirement or was "resident" for the charged period.

      A judgement of acquittal in respect of Count Nine should be granted because the evidence presented by the Government failed to prove I joined the Seggerman family conspiracy to defraud the IRS by preparing and signing false tax returns and to subsequently aid in the preparation and filing of materially false 3520 forms.

A judgement of acquittal in respect of Counts Ten through Nineteen should be granted because the Government failed to prove I did not honestly and in good faith seek the advice of competent lawyers. The Government's key witness, Doug Stein, presented contradictory evidence to the jury, denying documentary evidence that had been in the Government hands showing first Bainton and then Stein provided me (in my capacity as a trustee) with legal advice. Stein then confirmed by email that he had directed all parties on the basis there was a trust in favor of Mrs Anne Seggerman and he had suggested the language all parties should use; he denied sending this email at trial. His former law partner, Joe Bainton, admitted to the jury he had failed to truthfully inform the jury he had acted as my lawyer in my capacity as Anne Seggerman's trustee.

Bainton admitted he and Stein advised me to continue to make payments to Anne Seggerman notwithstanding the criminal tax investigation of her children. Stein admitted he directed all parties (including accountants) as to how to deal with Bob Gordon's failure to report payments made to Mrs Anne Seggerman by Dr. Müllhaupt and myself on behalf of Lixam.

Bainton's testimony called into question the legality of the entire body of evidence presented to the Grand Jury in respect of Counts Ten through Nineteen. This evidence was presented at trial. The combination of Bainton and Stein's conflicted testimony and the issue of breach of attorney-client privilege may provide sufficient grounds for a mistrial, pursuant to my contemporaneously filed F.R.Crim.P. 33 application.

After the Government rested, on April 3, 2018, Defendant made an oral application for a judgment of acquittal pursuant to F.R.Crim.P. 29(a). The Court reserved its decision [motion renewed orally on April 6, 2018]. The Court has not yet ruled on Defendant's application.

A motion for acquittal must be granted if a reasonable jury could not have found the essential elements of the crimes charged beyond a reasonable doubt. See *United States v. Cassese,* 428 F.3d 92, 95 (2d Cir. 2005) (affirming judgment of acquittal where willfulness element was not proved beyond a reasonable doubt*); United States v. Jones*, 393 F.3d 107, 111 (2d Cir. 2004) (directing judgment of acquittal where there was insufficient evidence of defendant's involvement in charged conspiracy). While the Court must view the evidence in the light most favorable to the government and draw reasonable inferences in the government's favor, the question is whether a reasonable juror, drawing only reasonable inferences, could have found against the defendant on each element of each charge beyond a reasonable doubt. See, e.g., *United States v. D'Amato,* 39 F.3d 1249, 1256 (2d Cir. 1994); *United States v. Stewart,* 305 F.Supp.2d 368, 376-78 (S.D.N.Y. 2004). A conviction cannot "rest on mere speculation or conjecture," *United States v. Pinckney*, 85 F.3d 4, 7 (2d Cir. 1996) (citations omitted), and the government must do more than introduce evidence that is "'at least as consistent with innocence as with guilt.'" *D'Amato*, 39 F.3d at 1256 (quoting *United States v. Mulheren*, 938 F.2d 364, 372 (2d Cir. 1991)).

**A.  Defendant Was Not Proven Guilty of Counts One, Nine and Ten through Nineteen**

No reasonable jury could have found me guilty of Count One (obstruction), Count Nine (conspiracy) and Counts Ten through Nineteen (preparing false returns) because (i) the Government's evidence confirmed I did not join the hermetically-sealed and code-protected Seggerman family Cetura conspiracy ("the Cetura"); and (ii) the Government failed to prove I did not act honestly and in good faith by retaining Smith Gambrell & Russell LLP ("SGR") on behalf of the Lixam Trust to resolve questions of US tax law regarding payments made to Anne Seggerman. The Government's theory of case was based on me, first, joining the

existing Seggerman family tax-fraud conspiracy and then, unilaterally and inexplicably hiring and paying a reputable law firm to cover-up the conspiracy upon its discovery.

The Government's case improperly conflated distinct and separate funds detailed in the Cetura Agreement and Gullworthy Agreement, two quite separate entities, as one to the jury, causing confusion and ultimately causing the jury to return an unsound guilty verdict on Count Nine.

Henry and John Seggerman both testified I was a part-time attendee at the Four Seasons meeting. Suzanne and Yvonne [falsely] testified I attended the entire meeting. As cited above: "the government must do more than introduce evidence that is "'at least as consistent with innocence as with guilt" *D'Amato*, 39 F.3d at 1256

"Mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in [a] conspiracy, even if the defendant has knowledge of the conspiracy." *Samaria*, 239 F.3d at 235. "Evidence tending to show knowing participation in the conspiracy is also needed," *United States v. Soto,* 716 F.2d 989, 991 (2d Cir. 1983), i.e., facts sufficient to draw a "logical and convincing connection" between circumstantial evidence of an agreement, and the inference that an agreement was in fact made. See, e.g., *Gore,* 154 F.3d at 41. *United States v. Jones,* 393 F.3d 107 at 111

The Government's evidence, however, was singular in respect of the discussion at the Four Seasons regarding the Cetura Agreement[1]. Henry Seggerman testified that I was not present[2] when the Cetura Agreement was reviewed by the Seggerman family conspirators and Dr. Müllhaupt. Yvonne[3], Suzanne[4] and John[5] (with Henry, collectively "the Seggerman family conspirators") Seggerman could not confirm, at 17 years' distance, whether the Cetura Agreement was 'passed around' at the Four Seasons.

The Cetura Agreement concerned the liquidation of the Cetura Foundation assets. Yvonne Seggerman's testimony consistently confused the Cetura Foundation[6] and its assets with the Cetura Agreement. All the Seggerman conspirators admitted, as executors of Harry Seggerman's estate, they had concealed the Cetura Foundation assets and not disclosed them to Greg Hayes, the estate lawyer. In addition, Seggerman conspirators all testified I was not involved or had knowledge of their false income tax filings, the estate filing or their other *ultra vires* activities.

In contrast to the Cetura Agreement which detailed the liquidation of assets that formed part of Harry Seggerman's estate, the draft Gullworthy Agreement[7] concerned funds that had been allocated to "to take care of Anne [Seggerman]" prior to Harry's death and accordingly did not form part of Harry's estate. The only evidence the Government presented in its attempt to include Gullworthy's funds into Harry's estate was the revised and executed Gullworthy Agreement ("Gullworthy II")[8]. Gullworthy II was drafted by Dr. Müllhaupt and is subject to adjudication exclusively under Swiss law.[9]

Whether Gullworthy II takes precedent over the oral agreement made between Harry and me on May 18, 2001 is a matter of Swiss law that was not raised by the Government. The course of conduct understood and agreed between the concerned parties: Rabobank

---

[1] GX 105

[2] Tr. 539

[3] Tr. 354-355

[4] Tr. 761-762

[5] Tr. 1633

[6] GX 300

[7] GX 106

[8] DX 103

[9] *Ibid* Clauses 7 and 8.

Guernsey, Gullworthy's corporate director, myself as *pro tem* controller of Gullworthy, Dr. Müllhaupt the Seggerman family lawyer and the Seggerman heirs was that Anne would receive Gullworthy funds upon the conclusion of probate in the British Virgin Islands, Gullworthy's domicile.

Once Anne controlled Gullworthy's funds, she was obligated, after having given up any inheritance right to Gullworthy's assets pursuant to the conditions of Gullworthy II, to transfer the funds to Dr. Müllhaupt, who then became the Gullworthy funds controller and legal, but not beneficial owner. On receipt of the Gullworthy funds, Dr. Müllhaupt set up a trust to benefit Anne subject to the trustees absolute control over the amount of money provided to Anne.

In simple terms, by executing Gullworthy II and not challenging the consequence of the oral promise made by Harry to me before he died: e.g. Gullworthy's funds were held by me in a plain trust to 'take care of Anne' as I saw fit. The provisions of Gullworthy II required Harry's heirs gave up any inheritance rights to those funds.

It must then follow, as the Government has conceded, that if Gullworthy's funds were transferred to Anne's benefit prior to Harry's death, the funds would be effectively Anne's, tax free[10]. Anne's transfer of Gullworthy's funds to Dr. Müllhaupt would be, in effect, a loan of her own funds to Dr. Müllhaupt, who she in turn trusted to invest them for her and provide support payments back to her, in effect to loan her back her own money which would be remitted back to her in a controlled manner[11]. Giving tax-free money to another to hold and receiving it back is not a taxable event and accordingly as a participant who assisted in enabling such an arrangement I did not conspire to defraud the US Government, and no reasonable jury could convict me of conspiring to do so.

Counts Ten through Nineteen, perversely characterized by the Government as "the cover-up …what he did to conceal the truth from the government and the IRS" are so clearly contradicted by evidence of my honest good faith in the direction and guidance of competent and seasoned lawyers. Both were law partners of SGR, a well-respected law firm. Doug Stein, the tax partner had at one time worked for the IRS; Joe Bainton was head of the firm's New York litigation practice.

At the trial, AUSA McCleod informed the Court, when requesting Stein be allowed to rebut to Bainton's testimony:

"I would [sic] elicited, for example, this idea of the "legal principle": is there some legal principle that if someone doesn't have a right anywhere in any court to money, does it mean that it's a gift. That is exactly what Bainton said Doug Stein said to him. He was not asked that on direct and he was not crossed on it. That is the heart of the advice-of-counsel defense here, and Doug Stein was not able to speak to it. And he is the only other party to that conversation. So, there is an impression left essentially that it's Bainton's side of the story, but Doug Stein wasn't able to testify about it.[12]"

AUSA McCleod's colloquy with the Court continued:

"MS. McLEOD: I think we've set forth, I think, the authority and the case law in many, many of the briefings that we put forth. But essentially, there is supposed to be some Specificity given to the other party if you're making an advice-of-counsel defense.

---

[10] Tr. 1278

[11] Tr. 442: Yvonne Seggerman on re-direct: "She was loaning the money to herself basically."

[12] Tr. 1751

**4**

THE COURT: Some specificity. How much specificity? The content of all conversations?

MS. McLEOD: **The legal advice that was given that was relied upon**. **And that was never given to the government. And that is why we didn't inquire upon it, with Doug Stein**. Frankly, the government is prejudiced because of it." [Emphasis added].

      It is respectfully submitted, the Government's statement, through AUSA McCleod, that an advice of counsel defense was never given to the Government is not correct. Attached, for ease of reference and the argument and case law incorporated therein, as Exhibit A hereto is the relevant portion D's Reply Memo. of Law to Dismiss the Indictment dated June 21, 2013, Dkt. No. 66. The memorandum's argument and caselaw is incorporated herein by reference.

      Stein denied at trial he sent an email, dated March 5, 2013 detailing his role in filing the 3520's with specificity as to his knowledge of the existence of a trust, his suggestion of language to be used and his overall direction of the matter: DX 512. The Government's initial objection to DX 512 was withdrawn and it was published to the jury.

      Defendant first provided a copy of this email to the Government, as attachment C to Exhibit A to this letter-motion three months after it was received in 2013. The March 5, 2013 Stein email was attached as an Exhibit B to Defendant's February 6, 2018 Response to the Government's Motions in Limine (Docket No. 300). The Government, through AUSA DiMase and presumably for purposes of authentication, requested a "native" copy of the March 5, 2013 email on February 12, 2018; a "native" copy was duly provided.

      The Government has had nearly five years to authenticate Stein's March 5, 2013 email. Furthermore, I detailed in June 2013 a comprehensive argument, supported by facts, that all communication with SGR and Dworkin Hillman, the Seggerman accountants were privileged. In addition, the Court received an unredacted copy of Defendant's Memorandum of Law, Dkt. No. 58, that explicitly detailed Bainton's vulnerability and capacity to testify before the Grand Jury. After suffering multiple relapses, Bainton had only recently been released from a psychiatric hospital prior to testifying in 2013; Bainton remained a non-practicing partner of SGR on what extended to a two-year medical leave.

      The jury at trial was faced with conflicting testimony from two former partners of SGR. The March 5, 2013 Stein email is the subject of a fresh evidence application contained in my contemporaneously-filed Rule 33 motion. The March 5, 2013 Stein email was cc'd to my then retained standby counsel, Saul Bienenfeld, Esq. Mr. Bienenfeld has provided a declaration in support of my Rule 33 motion.

      Bainton testified at trial that he had detailed discussions with Dr. Müllhaupt concerning the trust and the relevant elements of the Gullworthy II Agreement. He testified he fully informed Doug Stein of his conversations with Dr. Müllhaupt. Bainton confirmed to the Court he provided me with legal advice in my capacity as Anne's trustee and that he had incorrectly told the Grand Jury I was not an SGR client. Stein's trial testimony included significant and convenient memory lapses, the trip to New York to meet Gordon and his lawyer and the lunch at the Wolf and Lamb, all facts which he had previously confirmed to the Government.

      Stein's testimony confirmed he had referred to me in billing records as the client. Lixam trustees paid retainers to SGR and retainers to SGR's designated accounting firm, Dworken, Hillman, LaMorte & Sterczala P.C, ("DHLS") for its services[13]. Stein, *sua sponte,* suggested language in email responses and in one instance, where DHLS requested I respond,

---

[13] Providing attorney-client privilege for lawyer-accountant-work product pursuant to the holding in *Kovel* [privilege more fully detailed in Exhibit A]

interjected his responses on my behalf, without asking my permission[14]. Importantly, Stein dictated the Little & Co. solicitors background letter to DHLS to me, reviewed my draft[15] as being consistent with SGR's gift theory, billed the trustees for his time and authorized its transmission.

Defendant respectfully submits that no reasonable jury could find that I did not act in honest good faith in retaining SGR, in my capacity and authority as a Lixam trustee, and subsequently acted on SGR's advice to clean up the "Bob Gordon mess". Accordingly, Defendant prays the Court acquit me of Counts Ten through Nineteen of the Indictment.

### B.  Defendant Was Not Proven Guilty of Counts Two through Seven and Count Eight

Ms. Kirsty Morgan, IRS witness for the Government testified at trial as follows:
Q. If a self-employed person -- isn't it correct to say that if a self-employed person makes less than -- makes less than $400, a 1040 is not required to be filed?
A. That is based on your books and records. The IRS wouldn't know that unless you filed, based on the record.
Q. No, that's not the question I asked. The question I asked you -- please answer the question that I asked you -- if you make a loss or if you make less than $400 as a self-employed person, you are not required to file a 1040; is that correct?
A. That is correct, because it doesn't meet the threshold.
Q. Thank you. That's right. So if you're a self-employed person, if you're a lawyer in solo practice and you make less than $400, you don't have to file a 1040.
MS. McLEOD: Objection.
THE COURT: Overruled. Overruled.
A. Based on the threshold?
Q. So you don't have to pay. That's correct. You don't have to file.
A. Correct[16]

Ms. Morgan then reviewed GX 1650, an executed Form 4868 extension to file a return request I had sent to the IRS in 2009.
Ms. Morgan's testimony confirmed the extension request was granted and a subsequent assessment was sent to the attention of a Michael K Little in 2012 at an unspecified US address notwithstanding the fact that the Form 4868 and a 2008 Form1099 filed by Grais and Ellsworth both identified my UK address as the address where I could be contacted.

Ms. Morgan's testimony then confirmed my good faith belief that if I lost money in a given year, I was not required to file a 1040.

Q. Now, take a look at this, item 4. Take a look at line "Estimate of totality tax liability" is zero. Correct?
A. That's what the line item says, yes.
Q. That's what it says. So if that's correct, there's no requirement to file a 1040. Isn't that so?
A. That's basically what it's telling me, the 4868, is the fact that you're asking for an extension to file.
Q. I understand that.
A. And you estimate that you owe zero.

---

[14] GX 531, Tr. 1101
[15] GX 534, Tr. 1112
[16] Tr. 159

**6**

Q. That's right. But if it's true that -- an estimate is an estimate, isn't it? Perhaps items of expenses that are not crystallized at that point in time. If it is so that the estimate is zero, no 1040 is required to be filed.
A. Correct.
Q. Thank you. So even though you've done this, an individual has done this, whether he's done it in 2007 or 2008, if he doesn't owe any tax, he's not required to file a 1040.
A. That's correct, if he does not.
Q. Thank you.
Now, item 8, "Check here if you are 'out of the country' and a U.S. citizen or resident." Right?
A. That's what the line item says, right.
Q. That's right. And are you familiar with the rules for U.S. residents who are not citizens?
MR. DiMASE: Objection.
THE COURT: You can answer that yes or no.
A. I am not familiar with that, no.

    The Government adduced no evidence at trial that after the deduction of all allowable business expenses I made a profit for the tax years 2005 through 2010. Accordingly, no reasonable jury could have found me guilty of willfully failing to file tax returns for those years as my understanding of my obligations was consistent with those of a veteran IRS examiner.

    In addition, I respectfully request the Court to consider a further submission in respect of the US/UK Tax Treaty's provisions as I am awaiting fresh evidence, from HMRC's Competent Authority, which substantiates my good faith belief I did not willfully fail to file US tax returns. This request, more fully developed in my Rule 33 motion, is supported by an email received from an associate of Mr. Shaun Thomas, the UK Competent Authority in respect of the Treaty. Mr. Thomas has been on extended sick leave since December 2017 resulting in limited periods of return to work. Mr. Thomas anticipates his return on May 7, 2018 when he will provide an update of the status of the Treaty application to the IRS made pursuant to my Position Paper[17] as it is relevant. It is submitted, to confirm my good faith defense to the failure to file charges.

    In respect of Count Eight, the Government adduced: (i) no evidence that I knew of the FBAR reporting requirement; and (ii), no evidence that I acted with the specific intent to violate that requirement and (iii) no evidence that I was living in the US and had not planned to permanently leave the US.

    The Government, in its Memo. in Opp. to D's Motion to Dismiss the Indictment confirmed the FBAR residence requirement, as amended in 2008, necessary for an individual to file an FBAR:

    "The 2008 amendments to the FBAR definitions provide that, "[t]he definition of 'resident alien' found in IRC § 7701(b) is not applicable for FBAR purposes. The plain meaning of the term 'resident' (in this context, someone who is living in the U.S. and not planning to permanently leave the U.S.) should be used for FBAR examination purposes[18]"

    It is not disputed that I was living permanently in the UK during the years charged in Count Eight [after giving up my apartment on East 49th Street in 2008] and therefore any reasonable examination would have found me to have ceased living in the US with the intention of permanently leaving US from 2008 onwards for FBAR examination purposes and therefore no longer "resident".

---

[17] Dkt. # 280-1, December 22, 2017

[18] Dkt. # 62, May 31, 2013, Page 24

7

Accordingly, no reasonable jury could convict me of willfully failing to file FBAR's for the years 2008, 2009, 2010 and 2011 and I pray the Court acquit me of Count Eight.

Respectfully submitted.

/s/
Michael Little, *pro se*
Defendant

cc: AUSA Christopher J. DiMase (via ECF)
    Sean Maher Esq, (via email)