UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                   S2 12-cr-647 (PKC)

      -against-

                                                                   OPINION AND
                                                                   ORDER

MICHAEL LITTLE,

                               Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendant Michael Little was charged with nineteen counts of tax crimes in a Superseding Indictment S2 12 Cr. 647 (PKC) (the "Indictment"). These charges related to Little's role in assisting the heirs to Harry Seggerman's multimillion-dollar estate evade paying taxes on their inheritances from 2001 to 2010 and Little's failure to file documents reporting his own income from 2005 to 2010.

        For his alleged involvement in assisting the Seggerman family evade taxes, Count One charged the defendant with obstructing and impeding the due administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a), Count Nine charged him with conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and Counts Ten through Nineteen charged him with aiding and assisting the preparation of false IRS Forms 3520 in violation of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2. Counts Two through Seven charged him with failing to file individual income tax returns from 2005 to 2010 in violation of 26 U.S.C. § 7203. Finally, Count Eight charged the defendant with failing to file reports of foreign bank and financial accounts ("FBARs") in violation of 31 U.S.C. §§ 5314, 5322(a); 18 U.S.C. § 2; and 31 C.F.R. §§ 103.24, 103.27(c)&(d), 103.59(b).

Following an approximate three-week jury trial, defendant was convicted on all nineteen counts of the Indictment. Defendant now moves for a judgment of acquittal on all counts under Rule 29, Fed. R. Crim. P., or, in the alternative, for a new trial under Rule 33, Fed R. Crim. P. For the following reasons, the motions are denied.

I. Defendant's Rule 29 Motion for Judgment of Acquittal

Defendant asserts that, based on the evidence presented at trial, no reasonable jury could have found him guilty on any Count charged. Accordingly, he requests a judgment of acquittal on all nineteen counts. Upon review and consideration of all the evidence, this Court holds that the government's proof was sufficient to sustain a conviction on all counts.

A. Legal Standard

Rule 29(a), Fed. R. Crim. P., provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A defendant who wishes to challenge the sufficiency of the evidence supporting his conviction under Rule 29 "bears a heavy burden." United States v. Abdulle, 564 F.3d 119, 125 (2d Cir. 2009) (citation omitted). In reviewing such a motion, the court must view the evidence "in its totality and in the light most favorable to the government." Id. at 125 (citation omitted). Moreover, the court must "defer[] to the jury's evaluation of the credibility of the witnesses, its choices between permissible inferences, and its assessment of the weight of the evidence." United States v. Jones, 482 F.3d 60, 68 (2d Cir. 2006); see also United States v. Florez, 447 F.3d 145, 156 (2d Cir. 2006) ("We will not attempt to second-guess a jury's credibility determination on a sufficiency challenge."). The court must deny the motion if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Aguilar, 585 F.3d 652, 656 (2d Cir. 2009) (quoting Jackson v. Virginia,

443 U.S. 307, 319 (1979)). Furthermore, the government is not required to "negate every theory of innocence." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000). Where the court "concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter." Id. (alteration in original).

B. Discussion

i. Count One, Count Nine, and Counts Ten Through Nineteen

1. The Government's Evidence

The evidence put forth by the government with respect to Counts One, Nine, and Ten through Nineteen is summarized as follows. Harry Seggerman died in May of 2001, leaving behind a multimillion-dollar inheritance—much of it in offshore accounts—to his wife, Anne Seggerman, and his five children. Of these children, Yvonne, Henry, Suzanne, and John Seggerman testified at trial. Anne was an executor for Harry's estate, but did not report the undeclared offshore assets to the IRS as required by Unites States law. (Tr. 187-90). The Seggerman children testified that Little and Dr. Walter Müllhaupt, a Swiss attorney, assisted the family in funneling these assets into the United States in a manner that avoided IRS detection. (Tr. 172, 221-23, 491, 535, 761-62, 1634-35, 1666-67).

This assistance began in 2001. Yvonne testified that on August 8, 2001, she, Henry, Suzanne, and Anne met with Little and Müllhaupt at the Four Seasons hotel in Manhattan to discuss the offshore assets (the "Four Seasons meeting"). (Tr. at 194-95). Yvonne also testified regarding a handout used at the meeting that discussed the two funds that were part of the Seggermans' inheritance, what the Court will refer to as the "Cetura Funds" and "Gulworthy Holdings." (Tr. 202, GX-102). Anne and the children divided the Cetura Funds, while Anne alone inherited Gulworthy Holdings. (Tr. 204, GX-105, DX-103). According to Yvonne,

Müllhaupt explained at the meeting that Anne's portion of both funds would be moved to a trust in Switzerland, that Anne would be named beneficiary, and that Müllhaupt and Little would act as trustees. (Tr. at 208-10).

Bank records and Little's own testimony show that a trust, Lixam Provisio ("Lixam"), was thereafter established in Switzerland, naming Anne as the beneficiary, and Little and Müllhaupt as trustees. (Tr. 1866, GX-1506T). The records showed that the balance in the trust was $6.6 million as of October 16, 2001. (GX-1506T at 144). Two Seggerman children testified that Anne's share of the inheritance was about $6.5 million. (Tr. at 204, 224, 1636). The bank records also showed that funds from Lixam flowed into Steiner Productions ("Steiner"), a corporate entity in the United States, controlled by Anne. (GXs-1500, 1502A-B, 1503A-C, 1504, 1505, 1506).

Yvonne also testified that in January 2002, Little asked her to become a one-percent owner in Steiner because he needed someone to file tax returns on Steiner's behalf, who was unlikely to "draw any attention to themselves because they're gainfully employed and least likely to draw IRS scrutiny." (GX-111, Tr. 249-50; Tr. 252). This testimony was corroborated by contemporaneous notes that she took during that conversation. (GX-111). In recruiting Yvonne, defendant explained to her that money coming into Steiner from Lixam would be documented as loans and assured her that his accountant Bob Gordon would make the tax returns look legitimate. (GX-111, Tr. at 286-87). From 2001 to 2010, over $3 million flowed from Lixam to Steiner in this manner. (Tr. 1397-98, 2036). Little charged fees in excess of half-a-million dollars for his services managing Lixam. (See GX-112; GX-402).

In July 2010, the IRS began investigating Anne's foreign bank and financial accounts. (GX-554, Tr. 1040-41). Thereafter, Little began working with attorneys Doug Stein

and Joseph Bainton to provide legal assistance to Anne. Stein's testimony revealed that Little contacted Bainton to help him represent Anne with respect to the IRS investigation. (Tr. 1036-37). Shortly thereafter, Bainton contacted Stein. (Id.)

James Cosgrove, an accountant at the Dworken Hillman accounting firm ("Dworken") testified that Little contacted his firm in August 2010 seeking assistance in preparing Forms 3520 on behalf of Anne. (Tr. at 1282-88, 1362-66, GXs-1200, 1204). These forms are used to report transactions with foreign trusts and receipts of foreign gifts to the IRS. Together, Stein and Cosgrove testified about the representations that Little and Bainton made regarding Anne's unreported funds during this period. The government presented numerous letters, emails, and notes from phone calls to corroborate their testimony. (e.g. GX-535). Specifically, they testified that Little and Bainton told them and their associates on numerous occasions that the funds flowing from Lixam to Anne were "pure gift[s]" from Müllhaupt. (Tr. 1108, 1401, 1036-1038, 1044-45, 1056-57, 1062-63, 1067-73, 1362-65, 1369, 1391-94; GXs-325, 1230). Bainton also informed them that the funds were not previously reported because of the incompetence of Anne's accountant, Bob Gordon. (Tr. 1053). Based on the representations, Cosgrove and his associates prepared Forms 3520 on behalf of Anne for the years 2001 through 2010, stating that the funds transferred from Steiner to Anne were gifts. (Tr. at 1400-01). These forms were thereafter filed with the IRS. (Tr. at 125-34; GXs-1608-1627).

2. Count One: Obstruction

Count One charged the defendant with a violation of 26 U.S.C. § 7212(a). Section 7212(a) makes it unlawful to "corruptly . . . obstruct[] or impede[] the due administration" of the Internal Revenue Code. 26 U.S.C. § 7212(a). On this Count, the defendant argues in general terms that the government failed to present "any evidence [he] acted

corruptly to secure an unlawful advantage for [him]self, and failed to prove [he] knowingly and deliberately engaged in an affirmative act to obstruct a foreseeable tax-related proceeding."

A defendant violates § 7212(a) if he (1) endeavors to obstruct or impede the due administration of a pending or reasonably foreseeable tax-related proceeding and (2) acts corruptly in doing so. See Marinello v. United States, 138 S. Ct. 1101, 1109–10 (2018); United States v. Parse, 789 F.3d 83, 121 (2d Cir. 2015). To "endeavor" to obstruct or impede the due administration of a proceeding is to knowingly and deliberately act or make an effort that has a reasonable tendency to obstruct or impede a proceeding. See United States v. Kelly, 147 F.3d 172, 176–77 (2d Cir. 1998). Examples of qualifying proceedings include investigations, audits, or "other targeted administrative action." Marinello, 138 S. Ct. at 1109. To act "corruptly" is to act with the "intent to secure an unlawful advantage or benefit either for one's self or for another." Parse, 789 F.3d at 121 (quoting Kelly, 147 F.3d at 177).

The government presented sufficient evidence of each element of this offense. First, the evidence was sufficient to establish that Little "endeavored" to obstruct or impede a pending tax-related proceeding, namely the IRS investigation into Anne Seggerman. See Marinello, 138 S. Ct. at 1109 (listing an "investigation" as a qualifying "proceeding" under § 7212(a)). It was reasonable to infer that Little, as a trustee of Lixam, knew that the payments from Lixam to Anne constituted trust payments, not gifts. Nonetheless, corroborated testimony from Stein and Cosgrove showed that, after Little learned of the IRS investigation, he repeatedly informed Stein and the accountants at Dworken that the unreported funds Anne received from Steiner were "gifts" from Müllhaupt. Based on this evidence, the jury was free to infer that, by seeking to secure false Forms 3520, the defendant "knowingly and deliberately" attempted to impede the pending IRS investigation. Additionally, the jury was free to infer that Little acted

"corruptly" in securing these Forms 3520. Specifically, the jury could reasonably conclude that Little's motive for misrepresenting Anne's funds as "gifts" was to evade criminal penalty for his and Anne's unlawful tax activities. Such evasion surely constitutes an "unlawful advantage or benefit" for both himself and Anne.

### 3. Count Nine: Conspiracy

Count Nine charged the defendant with conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Specifically, it alleged that the defendant conspired to defraud the IRS by impeding its ability to ascertain and collect income and estate taxes.[1] Defendant Little argues that a judgment of acquittal is warranted on Count Nine because the government "improperly conflated distinct and separate funds detailed in the Cetura Agreement and Gullworthy [sic] Agreement."

"To sustain a conspiracy conviction, the Government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." United States v. Coplan, 703 F.3d 46, 62 (2d Cir. 2012) (quoting United States v. Rodriguez, 392 F.3d 539, 545 (2d Cir. 2004)). As discussed, in deciding a Rule 29 motion, courts must avoid usurping the jury's role as the ultimate judge of the evidence. This deference is "especially important" in the conspiracy context "because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the

---

[1] The Indictment also alleged two other possible objects of the conspiracy: subscribing to tax returns that were materially false, and aiding and assisting in the preparation of materially false tax returns. This Court will only address the alleged conspiracy to defraud the IRS because defendant's Rule 29 motion raises an issue that relates only to that object, and this Court holds that the evidence was sufficient with respect to that object. See United States v. Coplan, 703 F.3d 46, 62–63 (2d Cir. 2012) (quoting Griffin v. United States, 502 U.S. 46, 56–57 (1991)) ("[When] a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged.").

precision of a surgeon's scalpel." United States v. Anderson, 747 F.3d 51, 72–73 (2d Cir. 2014) (quoting United States v. Pitre, 960 F.2d 1112, 1121 (2d Cir. 1992)). A "defendant's mere presence at the scene of a crime, his general knowledge of criminal activity, or his simple association with others engaged in a crime" do not alone establish conspiracy liability. Id. at 61. However, a defendant's "presence may establish his membership in the conspiracy if all of the circumstances considered together show that by his presence he meant to advance the goals of that conspiracy." United States v. Abelis, 146 F.3d 73, 80 (2d Cir. 1998). If a conspiracy is shown to exist, "it does not take overwhelming proof to link additional defendants to it." United States v. Desimone, 119 F.3d 217, 223 (2d Cir. 1997).

The government's evidence at trial was sufficient to sustain a finding that Little conspired to defraud the IRS by impeding its ability to ascertain and collect income and estate taxes. Specifically, based on Yvonne Seggerman's testimony, the jury could reasonably infer that Little knew of a plan to funnel Anne Seggerman's inherited offshore assets into the United States without properly reporting it to the IRS or paying taxes on it. That testimony established that Little was present at the Four Seasons meeting, during which Müllhaupt described a plan to establish a Swiss trust for Anne's benefit and appoint himself and Little as trustees. The government's evidence also showed that the Lixam trust was eventually established in Switzerland and that Little agreed to be a trustee, which supports the inference that Little knowingly participated in the plan discussed at the meeting. Yvonne's corroborated testimony regarding a conversation she had with Little about the significance of Steiner Productions is further evidence that Little knowingly participated. She testified that Little asked her to become a one-percent owner in Steiner because she was "least likely to draw IRS scrutiny" and assured

her that his accountant would make the Steiner's tax returns look "legitimate" by documenting the money flowing from Lixam into Steiner as "loans."

Defendant's argument that the government "improperly conflated" the Cetura Funds and Gulworthy Holdings is without merit. Defendant essentially argues that the jury should have accepted his version of the events rather than the government's. His argument at trial and in his Rule 29 motion was that the funds in Gulworthy Holdings were a pre-death gift from Harry to Anne, and as such, they were not taxable as part of Harry's estate. Though the Cetura Funds were taxable, he argues that he played no role in hiding those funds from the IRS. The jury was free to reject this version of events because there was sufficient evidence to find that the funds in Gulworthy Holdings were part of Harry's estate. This evidence included testimony from Yvonne and Henry Seggerman as well as notations on the Gulworthy agreement itself and the account opening records for the Lixam trust.[2] (Tr. at 228, 735, DX-103 at 2, GX-1506T at 92).

4. Counts Ten Through Nineteen: False Filing of Forms 3520

Counts Ten through Nineteen charged the defendant with aiding and assisting in the preparation of false IRS Forms 3520 in violation of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2. Under Section 7206(2), it is unlawful to "[w]illfully aid[] or assist[] in, or procure[], counsel[] or advise[] the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return . . . , which is fraudulent or is false as to any material matter[.]" A defendant violates this provision when (1) the defendant aids, assists, procures, counsels, advises, or causes the preparation and presentation of a tax return, (2) the return is

---

[2] The Gulworthy agreement, signed by Little, stated that Harry Seggerman "one day prior to his death, conveyed to Michael J. Little his last will and intention that Gulworthy and its assets should be exclusively for the benefit of Anne during her lifetime." (DX-103 at 2). The Lixam account documents noted that the source of the funds in Lixam was "Inheritance to wife (housewife)." (GX-1506T at 92).

fraudulent or false as to a material matter, and (3) the act of the defendant is willful. United States v. Klausner, 80 F.3d 55, 59 (2d Cir. 1996) (citing United States v. Perez, 565 F.2d 1227, 1233–34 (2d Cir. 1977)).

Defendant argues that no reasonable jury could have found him guilty of Counts Ten through Nineteen because the government "failed to prove that [he] did not honestly and in good faith seek the advice of competent lawyers" in preparing Forms 3520, which ultimately reported the funds received by Anne Seggerman from Lixam as foreign "gifts." Essentially, he argues that the evidence was insufficient with respect to the third element—willfullness—because the government failed to disprove his advice of counsel defense. This claim is meritless. An advice of counsel defense is an affirmative defense. As such, the burden is on the defendant to prove the elements of the defense, not on the government to disprove the defense. A successful advice of counsel defense requires the defendant to prove that he (1) honestly and in good faith sought the advice of counsel, (2) fully and honestly laid all the facts before his counsel, and (3) honestly and in good faith followed his counsel's advice, believing it to be correct and intending that his acts be lawful. United States v. Colasuonno, 697 F.3d 164, 181 (2d Cir. 2012).

The government's evidence was sufficient to support the jury's rejection of this defense. As discussed, the government presented evidence to show that the funds distributed to Anne from Lixam constituted Anne's inheritance from her late husband, that Lixam constituted a trust for the benefit of Anne, and that Little was a trustee of Lixam. Further, Doug Stein testified that when Little sought advice from Joseph Bainton and Stein regarding the preparation of Forms 3520, Little represented to them that the funds flowing from Lixam to Anne constituted a "gift" from Müllhaupt. From this evidence, the jury was free to infer that the funds flowing from

Lixam were not a gift from Müllhaupt, that Little knew these funds were not a gift, and that Little lied to his attorneys about the nature of the funds in Lixam in order to obtain their help in preparing false Forms 3520, unlawfully reporting Anne's assets as "gifts," rather than trust payments. As such, the jury was well within reason in determining that Little (1) did not seek advice from counsel honestly and in good faith, (2) did not fully and honestly disclose to his attorneys all of the facts, and (3) did not honestly and in good faith follow his counsel's advice intending that his acts be lawful. The jury's rejection of Little's advice of counsel defense and its finding of guilt on these Counts is, therefore, properly supported by the evidence.

### ii. Counts Two Through Seven: Failure to File Tax Returns from 2005 Through 2010

Counts Two through Seven charged the defendant with willfully failing to file individual income tax returns from 2005 through 2010 in violation of 26 U.S.C. § 7203. Defendant does not dispute that he failed to file the required returns in these years. He disputes only the sufficiency of the government's evidence that his failure to file was willful.

"In the tax fraud context, willfulness is established when the government shows (1) 'the law imposed a duty on the defendant'; (2) 'the defendant knew of [that] duty'; and (3) '[the defendant] voluntarily and intentionally violated that duty.'" United States v. Gilmartin, 684 F. App'x 8, 11 (2d Cir. 2017) (summary order). The government bears the burden of showing that a failure to file is willful, but may meet that burden solely with circumstantial evidence. See id. For instance, the law permits a jury to infer willfulness based on "the defendant's prior taxpaying record" or "educational background." Id. (listing the defendant's "advanced education level" and "history of filing valid tax returns" as support for an inference of willfulness).

This Court holds that the government presented sufficient evidence of willfulness at trial. At trial, Little testified to his "prior taxpaying record," stating that he had previously filed nine or ten tax returns when he lived and worked in New York in the 1970s and 80s. (Tr. 1920). An IRS employee testified that Little submitted requests to the IRS for extensions to file tax returns in 2008 and 2009. (Tr. at 152-58). Further, the government presented evidence that Little was both well-educated and financially sophisticated. Specifically, the jury heard testimony that Little had a law degree from the United Kingdom, was admitted to practice as a barrister in Britain and an attorney in New York, had worked in the finance industry on Wall Street and in London for twenty-five years, had run his own businesses, had worked closely with trust companies and banks in a number of countries, and had previously claimed domicile in foreign jurisdictions to obtain tax advantages. (Tr. 1915-21, 1952-57, 2055, 2062-65). Based on this evidence, the jury was free to infer that the defendant knew of his tax obligations, but chose not to file. Thus, there is sufficient evidence that defendant acted willfully in failing to file returns from 2005 through 2010.

### iii. Count Eight: Failure to File FBARs from 2007 Through 2010

Count Eight charged the defendant with willfully failing to file a Report of Foreign Bank and Financial Accounts ("FBAR") with the IRS in violation of 31 U.S.C. §§ 5314, 5322(a); 18 U.S.C. § 2; and 31 C.F.R. §§ 103.24, 103.27(c)&(d), 103.59(b). On this Count, defendant again asserts that the government failed to present sufficient evidence of willfulness. He also asserts that the government did not establish that he was subject to FBAR filing requirements because the government presented "no evidence that [he] was living in the US and had not planned to permanently leave the US" from "2008 onwards."

The government's evidence was sufficient to sustain a guilty finding on Count Eight. Regarding willfulness, for the same reasons discussed with respect to Counts Two through Seven, this Court holds that the government presented sufficient evidence to show that defendant's failure to file FBARs was willful.

Regarding defendant's claim that the government presented "no evidence that [he] was living in the US and had not planned to permanently leave the US.," the defendant refers to the 2008 amendment to the FBAR definitions, which states "[t]he plain meaning of the term 'resident' (in this context, someone who is living in the U.S. and not planning to permanently leave the U.S.) should be used for FBAR examination purposes." Internal Revenue Manual 4.26.16.3.1.1. As this Court properly instructed, the jury was free to return a guilty verdict on Count Eight if it found that the defendant willfully failed to file an FBAR for any one of the years charged (2007, 2008, 2009, or 2010). Even assuming that defendant's assertion is true—that the government presented no evidence that he was a resident of the United States for FBAR purposes starting in 2008—a reasonable jury could still have found him guilty on Count Eight if it found that defendant lived in the United States without the intention to permanently leave the United States in 2007 or 2008. At trial, Little admitted that he was present in the United States for over 300 days in 2007 and 2008. (Tr. at 1926). The jury also heard testimony that Little primarily lived and worked in New York during 2007 and 2008. (Tr. at 927-34, 1885, 1925-26). Based on this evidence, the jury could logically conclude that Little was "living in the U.S. and not planning to permanently leave the U.S." in either 2007 or 2008 and thus subject to FBAR filing requirements for one of those years.

II.   Defendant's Rule 33 Motion for a New Trial

   A. Legal Standard

Rule 33, Fed R. Crim. P., provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The defendant bears the burden of showing that a new trial is warranted. United States v. Sasso, 59 F.3d 341, 350 (2d Cir. 1995). Generally, a court "has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001). For instance, "[i]n deciding whether to grant a motion for a new trial, the judge is not required to view the evidence in the light most favorable to the prosecution." United States v. Levy, 594 F. Supp. 2d 427, 435 (S.D.N.Y. 2009) (internal quotation marks omitted). Instead, "the court is entitled to weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." United States v. Robinson, 430 F.3d 537, 543 (2d Cir. 2005) (internal quotation marks omitted). At the same time, however, "the court may not wholly usurp the jury's role. It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." Id. (internal quotation marks omitted). Indeed, a court's discretion to grant a new trial "should be exercised sparingly." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). Further, in the Second Circuit, "[m]otions for a new trial are disfavored." United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995). Such motions should be granted only "in the most extraordinary circumstances." United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993). "The ultimate test is whether letting a guilty verdict stand would be a manifest injustice . . . . There must be a real concern that an innocent person may have been convicted." United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005) (internal quotation marks omitted).

B. Discussion

The defendant presents four reasons that a new trial is warranted. First, he requests a new trial based on newly discovered evidence of perjury by two trial witnesses. Second, he presents newly discovered evidence that the funds in Gulworthy Holdings did not belong to Harry Seggerman. Third, he asserts that the government presented privileged communications to the grand jury. Lastly, he asserts that the jury's verdict was "contrary to the weight of the evidence." On the last claim, the defendant incorporates the issues he raised in his Rule 29 motion. Considering these reasons in totality, this Court holds that defendant has not made the requisite showing of "extraordinary circumstances" that would warrant a new trial. His request for a new trial is, therefore, denied.

i. Newly Discovered Evidence of Perjury

Defendant takes issue with the trial testimony of two witnesses. First, he claims that Yvonne Seggerman perjured herself at trial because "an Excel spreadsheet . . . allegedly representing Harry Seggerman's combined offshore holdings[,] was not passed out at the Four Seasons meeting by Dr. Müllhaupt or [the defendant]" and Yvonne testified to the contrary. Second, the defendant claims that Doug Stein committed perjury when Stein "den[ied] sending" an email that Stein apparently sent to Saul Bienenfeld, defendant's retained standby counsel at the time.[3] Regarding Stein's alleged perjury, defendant has presented to the court what he purports is "newly discovered evidence" of an affidavit signed by Bienenfeld confirming that Stein sent this email.

---

[3] The email read, in pertinent part, as follows: "[A]s it pertains to the 3520 I will detail that based on the information given to me that there was [sic] trust offshore for the benefit of Ann that a 3520 should have been filed. That a 3520 must be filed when a US beneficiary receives a distribution from an offshore trust. I made that recommendation, reviewed 3520s prepared by an accounting firm and suggested language for all parties to use." (DX-512).

A defendant requesting a new trial based on newly discovered evidence must show that (1) "the evidence could not with due diligence have been discovered before or during trial," (2) "that the evidence is material, not cumulative," and (3) "that admission of the evidence would probably lead to an acquittal." United States v. Owen, 500 F.3d 83, 87 (2d Cir. 2007) (quoting United States v. Alessi, 638 F.2d 466, 479 (2d Cir. 1980)). Evidence "known by the defendant prior to trial, but [that] became newly available after trial" does not constitute "newly discovered evidence." Id. at 89; see also United States v. Muja, 365 F. App'x 245, 246 (2d Cir. 2010) (summary order) (holding that an affidavit from a co-conspirator describing how the co-conspirator met the defendant did not constitute "newly discovered evidence" because the defendant was aware of how the two met during trial). If the newly discovered evidence is evidence of perjury, the defendant must further show that "the witness in fact committed perjury." United States v. White, 972 F.2d 16, 20 (2d Cir. 1992).

No new trial is warranted based on Yvonne or Stein's testimony because Yvonne's testimony does not constitute newly discovered evidence, and there is no evidence that Stein's testimony was false. The defendant heard Yvonne testify at trial that either the defendant or Müllhaupt distributed a handout at the Four Seasons meeting, which discussed the Cetura Funds and Gulworthy Holdings. (Tr. at 201-02). If that testimony was false, defendant, like the defendant in Muja, was aware of its falsity at the time of trial. See Muja, 365 F. App'x at 246. As such, defendant's post-trial assertion that this testimony was perjured does not constitute "newly discovered evidence."

Regarding Stein's allegedly perjured testimony, even assuming that the Bienenfeld affidavit constitutes "newly discovered evidence" under Owen, there is no evidence that Stein "in fact committed perjury." See White, 972 F.2d at 20. At trial, Stein testified that he

did not "recall" sending the subject email, but he acknowledged that the email appeared to have been sent from his email address. (Tr. at 1128-30). Thus, assuming Stein did send the email, his statement that he did not "recall" sending the email does not amount to a denial and thus cannot amount to perjury.

    ii. <u>Newly Discovered Evidence Regarding the Source of the Funds in Gulworthy Holdings</u>

Defendant asserts that, after trial, he discovered the date of a fax sent by Harry Seggerman relating to the origin of the funds in Gulworthy Holdings. This date, he argues, creates "reasonable doubt as to the veracity of Henry Seggerman's characterization of Gullworthy's [sic] balances being the product of [Harry Seggerman's] hard work." Essentially, defendant argues, had the jury known the date of this fax, it would have concluded that the funds in Gulworthy Holdings did not wholly belong to Harry Seggerman.

Whatever the date of the fax shows, this date does not constitute "newly discovered evidence" warranting a new trial under <u>Owen</u>. As defendant concedes, the government disclosed this fax to defendant during discovery. (Doc. 432). The date is visible in the upper left hand corner of the fax. (Doc. 432-3, p. 14). Though slightly cut off, the date is still readily discernable. Even if the defendant were unable to immediately discern the date, it cannot be said that the date "could not with due diligence have been discovered before or during trial." <u>See</u> <u>Owen</u>, 500 F.3d at 87.

    iii. <u>Attorney-Client Privileged Communications Presented During Grand Jury Proceedings</u>

Defendant claims that Joseph Bainton falsely testified before the grand jury that defendant was not his client, thereby allowing the prosecutor to present privileged

communications to the grand jury, which resulted in defendant's indictment on Counts Ten through Nineteen. Defendant sought <u>dismissal</u> of Counts Ten through Nineteen on this ground on two previous occasions. Both requests for dismissal were denied. (Docs. 78, 151). At trial, Bainton testified that the defendant was, in fact, his client. (Tr. 1590). The defendant now seeks a <u>new trial</u> on Counts Ten through Nineteen based on the presentation of the allegedly privileged communications during the grand jury proceeding.

Generally, once a jury finds a defendant guilty at trial, "any error in the grand jury proceeding connected with the charging decision [is] harmless beyond a reasonable doubt." <u>United States v. Mechanik</u>, 475 U.S. 66, 70 (1986). Such error becomes harmless after a trial because "a petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted." <u>Id.</u> at 67 (declining to grant a new trial based on a violation of Rule 6(d), Fed. R. Crim. P., at the grand jury proceeding); <u>United States v. Warner</u>, 498 F.3d 666, 702 (7th Cir. 2007) (denying a new trial pursuant to <u>Mechanik</u> when the error during grand jury proceedings was the introduction of attorney-client privileged information). Under these circumstances, granting a new trial would "do nothing to correct an error in the indictment." <u>Warner</u>, 498 F.3d at 702. An exception to this rule exists when the trial does not "cure[] th[e] error." See <u>Lafler v. Cooper</u>, 566 U.S. 156, 166 (2012) (discussing, as examples, cases where either women or African Americans were deliberately excluded from the grand jury that issued the indictment). In such a case, a new trial may be warranted. <u>Id.</u>

In this case, no new trial is warranted based on the government's presentation of alleged attorney-client privileged communications to the grand jury. Even if the communications between Bainton and defendant were privileged, any error in presenting that

testimony to the grand jury was cured by the subsequent trial, during which the jury found the defendant guilty beyond a reasonable doubt on all counts. The Court sees no reason to deviate from the general rule set forth in Mechanik, especially when, as here, the defendant himself elicited testimony during trial regarding communications between him and Bainton to support his advice-of-counsel defense.

      iv. Weight of the Evidence

Defendant's third ground for a new trial is that the jury's verdict was against the weight of the evidence. He rests this claim on the same concerns raised in his Rule 29 motion. Though this Court has broader discretion to grant a Rule 33 motion than a Rule 29 motion, this case is not so "extraordinary" that the Court must step in to prevent "manifest injustice." As discussed above, the evidence that the government presented at trial was sufficient to sustain a jury verdict of Guilty on all nineteen Counts of the Indictment. This Court has considered the concerns raised by defendant in his Rule 29 motion in the context of his Rule 33 motion and sees no reason to disturb the jury's verdict.

CONCLUSION

The Court has considered all of the defendant's arguments, including those not expressly addressed herein, and find them to be without merit. For the reasons set forth above, defendant Little's motions for a judgment of acquittal under Rule 29 and for a new trial under Rule 33 are DENIED. The Clerk is respectfully directed to terminate the following motions: Docs 388, 389 and 432.

SO ORDERED.

_P. Kevin Castel_
P. Kevin Castel
United States District Judge

Dated: New York, New York
 November 1, 2018